54 So.2d 108 (1951)
MIAMI SHORES VILLAGE
v.
BESSEMER PROPERTIES, Inc.
Supreme Court of Florida, en Banc.
August 24, 1951.
Anderson & Nadeau, Miami, for appellant.
Loftin, Anderson, Scott, McCarthy & Preston, Miami, for appellee.
George J. Baya, Miami, for intervenors.
TERRELL, Justice.
Bessemer Properties, Incorporated, filed its bill of complaint in the Circuit Court wherein it alleged that it was the owner of certain lots in Blocks 16, 28 and 33, Miami Shores Village, according to the plat thereof recorded in Plat Book 10, at page 70, Public Records of Dade County. The bill of complaint further alleges that said properties were zoned by the Village in 1939 for residential purposes, that they were rezoned for business in 1945, and shortly thereafter they were again zoned for residential purposes. The bill then alleges that said properties are wholly unsuited for residential purposes because (1) the phenomenal development and increase in population of Miami Shores Village, (2) said lots abut on property used for business and public purposes, and (3) the classification of said lots in Zone R-8 as applied to existing local conditions is unreasonable, arbitrary and confiscatory.
The bill prays for a declaratory decree, holding (1) that said properties are not suitable for residential purposes but that they are suitable for business purposes only, (2) that a mandatory injunction be issued commanding defendant to change the zoning of said properties from R-8 (residential) to B-1 (business), (3) that defendant be enjoined from interfering with the plaintiff in the use of its properties for business purposes. Several owners in the vicinity were permitted to intervene. On final hearing the chancellor found for the complainant and directed defendant to rezone the property B-1 (business). This appeal is from the final decree.
The parties are at variance as to what questions the record presents for adjudication. The first, second and fifth questions *109 raised by appellant proceed on the general theory that the complainant did not exhaust its administrative remedy. In view of this situation it says this action was prematurely brought and the judgment should be reversed.
The bill of complaint challenged the zoning restrictions on equitable grounds, that is to say, it charged that they were arbitrary, unreasonable, confiscatory and for that reason were unconstitutional and void. The defendant accepted the challenge and in its answer did not raise the point that administrative remedies should have been exhausted. It is true that the intervenors attempted to raise the point, but the order permitting the intervention did not allow it. The administrative aspect was ignored by the trial court no doubt for the reason that complainant elected to proceed on equitable grounds. Since we do not take judicial knowledge of municipal ordinances and the case has been thoroughly tried and disposed of on the merits, it would at least have the appearance of judicial folly to send it back to be tried anew. This is all the more true since there was ample reason to assault the zoning for equitable reasons. Tau Alpha Holding Corporation v. Board of Adjustments, City of Gainesville, 126 Fla. 858, 171 So. 819.
The real question in the case challenges the constitutional validity of the ordinance zoning appellee's properties for residential rather than business purposes. This point is raised by the third and fourth question of appellant and the first question of appellee.
Complainant acquired the lands embraced in Miami Shores Village through the foreclosure of what was known as a boomtime mortgage. The territory incorporated as a municipality in 1931 and clothed with zoning power by its charter. It was within the metropolitan area of Miami, one of the fastest developing sections in this country. It consisted of about 4,500 residential units well planned and laid out. It grew so rapidly that in 1950 its population was over 5,000. The heart of the business section was Second Avenue, Fifteenth to Twenty-second Streets inclusive. Within this area there are a bank, drug stores, grocery stores, moving picture theatre, A & P Market, City Hall, Fire Station, Public Library and other facilities characteristic of an ambitious community that is popping at the seams with growing pains.
In addition to the two blocks zoned for parks on the South, two blocks were zoned for City Hall, Fire Station and Public Library and Park on the North. Between these blocks there were eight blocks zoned for business. The lots in question were between those zoned for City Hall, Library and business in the North and those zoned for parks and business districts in the South. In other words, they fronted on the most heavily traveled street in the area where everything else was business property and they were separated from business property on the North and South by streets. Under such circumstances they were primarily desirable for business purposes and undesirable for residential purposes. Query: Did the refusal of the City to classify said properties for business purposes, the most productive for which they could be appropriated, arbitrarily and unreasonably deprive complainant of the use of its property?
The evidence led the chancellor to an affirmative answer to this question. It shows that for residence purposes the properties of appellee are worth $35 to $40 per front foot, but that for business purposes they are worth $350 to $475 per front foot. It is also shown that zoning said properties for residential purposes had no relation whatever to the public health, safety or welfare, that rezoning for business purposes would result in an eighth fold increase of revenue to the City, that practically all the business places in the municipality are located on Second Avenue, that it is a noisy, busy thoroughfare and not at all desirable for residence purposes. Other evidence reveals physical, esthetic and environmental reasons why Second Avenue should continue to be the main business part of the City. Some of the intervenors testified that they purchased their lands on the strength of advertisements by appellee announcing to the world that this was to be *110 a quiet residential subdivision and that to permit it to be turned into a business area would increase the noise, the traffic hazards and other detractions that would depreciate the value of their property. The main reliance of appellant appears to be that Miami Shores Village is primarily residential, that the municipality and not the courts should control its zoning policy and that there must be an arbitrary line of demarcation somewhere to distinguish business from residence property.
Miami Shores Village is a typical modern suburban development, the like of which is constantly being put on adjacent to every metropolitan area in the country. They must necessarily meet the requirements of the approved zoning restrictions. A limited portion zoned for business purposes is common to all of them. In this case the lots are within the limited business zone and they are interspersed among the properties zoned for business purposes. The evidence revealed no good reason why they were so zoned in the first place and every reasonable deduction from the evidence points to the justice of the chancellor's decree removing them from it. The change will injure no one and will greatly benefit appellee and the municipality. It would be parallel to conclude that if Burdine's Department Store on Flagler Street in Miami was the owner's home instead of his store he could not move on equitable grounds to have it rezoned in order that he may use it for business purposes.
The chancellor found that under the circumstances recited, the ordinance zoning appellee's property for residence purposes amounted to confiscation, that it had no substantial relation to the public welfare, that it was arbitrary, unreasonable and confiscatory, and being so, was unconstitutional and void. He further ordered the municipality to change its zoning restrictions so that appellee's lands be placed in Zone B-1 for business purposes. We think the record amply sustains his conclusion.
It is contended on cross assignment that instead of imposing the entire cost of this litigation on defendant, it should have been imposed on the defendant and the intervenors jointly. If the chancellor had seen fit to enter such a decree we would not be inclined to reverse him, but since he decreed otherwise, we are not convinced that he should be reversed on that point.
Affirmed.
SEBRING, C.J., and CHAPMAN, HOBSON and ROBERTS, JJ., concur.
THOMAS and ADAMS, JJ., not participating.