96 So.2d 219 (1957)
Joe F. HAMMOND, Joseph B. Mallard, Sr., Ray Greene, Julian Warren and Joe Burnett, as and constituting the Board of County Commissioners of Duval County, Florida, and Arthur Sollee, as Zoning Director of Duval County, Florida, Appellants,
v.
George CARLYON and Fred Caddell, Appellees.
Supreme Court of Florida, Special Division B.
June 28, 1957.
*220 J. Henry Blount, Thomas D. Oakley and Barnes, Barnes, Naughton & Slater, Jacksonville, for appellants.
Martin Sack, Jacksonville, and Ausley & Ausley, Tallahassee, for appellees.
HOBSON, Justice.
Plaintiffs, appellees here, own property fronting on the Jacksonville Expressway. The property consists of three blocks of irregular shape, each having a depth of only ninety feet, the odd shape of the blocks and their narrow depth having resulted from the cutting of the Jacksonville Expressway through the plaintiffs' subdivision. Further to describe the situation of the property, the findings of the chancellor, who heard all of the testimony and personally viewed the premises, read in part as follows:
"* * * the property, on the north, fronts on the Jacksonville Expressway, one of the main arterial highways connecting U.S. 1 and U.S. 17, as well as the two boulevards connecting Jacksonville and the Beaches, all of said highways carrying a very heavy and constantly increasing flow of motor traffic. To the east, the property fronts on Arlington Road, another heavily travelled highway connecting the well populated Arlington residential area with the Expressway and two of the boulevards to the Beaches. On the South, the property fronts on Gould Road, which has a width of sixty-six feet, thereby creating a rather wide buffer strip between the property under question and the property lying directly south of Gould Road.
"Approximately one-half to three-quarters of a mile west of plaintiffs' property stands the John E. Mathews Bridge, a part of the Expressway over the St. Johns River, and said bridge during December, 1954, passed 501,408 vehicles through its tolls and in May of 1955 the volume of traffic over said bridge had increased to 581,199 vehicles. A traffic count for one hour on a normal day showed 1,164 vehicles passing in front of plaintiffs' property on said Expressway.
"According to defendants' Exhibit 1 the property directly in front of and across the Express Highway and extending in both directions for approximately 2000 feet from plaintiffs' property is all zoned Business A-1, except one parcel zoned Business A. Presently located or in the process of development on aforesaid properties are filling stations, a large motel and an expansive shopping center providing parking facilities for approximately *221 1000 cars. Further, defendants' Exhibit 1 and the evidence show that on the south side of the Expressway, on which plaintiffs' property is located and directly across from plaintiffs' property on Arlington Road a large tract was rezoned Business A in October 1954, and at the corner of Seabrook Parkway, approximately 179 feet to the east of plaintiffs' property two large parcels were rezoned to Business A-1 in August 1952 and in March 1955, one of said parcels having presently located thereon a Howard Johnson Restaurant and the other to have situated thereon a proposed motel. The conditions affecting these two said parcels of property appear to be substantially similar to those affecting plaintiffs' property. In fact, both of said parcels directly adjoin residential property to the south and one parcel adjoins a Lutheran Church. Both being without benefit of a buffer strip such as exists between plaintiffs' property and the property directly south."
Plaintiffs sought to have the property rezoned by the defendants (the Board of County Commissioners of Duval County, sitting as a Zoning Board, and the Zoning Director) from Residence A to Business A-1 to bring it into harmony with the zoning classification of the other property adjoining the Expressway. The petition was denied, and the plaintiffs commenced this litigation, which resulted in detailed findings by the chancellor, who reached the following conclusion:
"That from the evidence as adduced by plaintiffs in support of their complaint herein, it appears to the Court that plaintiffs' property is substantially useless for residential purposes; that its highest and most economic use would be for Business A-1 property and that to rezone said property from Residence A to Business A-1 would not impair or endanger the public health, safety or morals, but that said rezoning to Business A-1 would be consistent with the present trend and development along the Expressway in the vicinity of the property in question and that the action of the defendants herein in denying plaintiffs' petition for rezoning from Residence A to Business A-1 was wholly arbitrary, discriminatory, confiscatory and an abuse of discretion."
In his amended final decree, the chancellor enjoined the defendants from enforcing against the plaintiffs' property any zoning restrictions more stringent than Business A-1 use. As for the the form and effect of this final decree, questioned by the appellants herein, we may say at once that it finds a precedent in Miami Shores Village v. Bessemer Properties, Fla., 54 So.2d 108, and no error is shown upon this ground.
The most revealing single piece of evidence in the case is Defendants' Exhibit 1, which is a map of the area involved. We will not reproduce it here, since the findings of the chancellor, from which we have quoted, adequately describe the situation of the property involved, but we will observe that this map bears a marked similarity to that which is reproduced in the opinion prepared by Mr. Justice Thomas in Tollius v. City of Miami, Fla., 96 So.2d 122. The Tollius case is virtually dispositive of this one. The case now before us is even stronger than Tollius for that case resulted in a reversal, while under the same analysis this case will result in an affirmance of the chancellor's final decree. Further on the merits of the case see City of Miami v. Ross, Fla., 76 So.2d 152.
We would affirm this case without further ado were it not for a point raised by appellants which merits examination. As we stated previously, the chancellor personally viewed the premises. Appellees in their notice for the taking of testimony *222 and final hearing had stated that at such time they would move the court to view the premises, but appellants contend that they never consented to the view of the premises which the chancellor had, nor did they have notice of the same. Courts in other jurisdictions which have had an opportunity to consider this state of affairs have not been of one mind with regard to its legal effect. See Annotation, Judges' Findings on Personal Observation, 97 A.L.R. 335, cases cited therein and cases supplemental thereto.
In Florida, so far as we are informed, the situation has arisen only once before, in Atlantic Coast Line R. Co. v. Hendry, 112 Fla. 391, 150 So. 598. In that case, which arose from an action for negligence, the judgment of the trial court was "apparently predicated on facts acquired from a view of the locus in quo as well as from facts brought out at the trial." We stated that this was erroneous because the view of the premises is "for the purpose of explaining and clarifying evidence and facts brought out at the trial" but that it "cannot be employed as basis for a judgment." We went on to state, however, that upon the whole record there was a showing of negligence resulting in damage, and we proceeded to affirm the judgment on condition of a small remittitur. Thus this court in the Hendry case was clearly of the opinion that, while basing a judgment upon a view of the premises was error, it was not reversible error provided there was evidence of record which was otherwise sufficient to support the judgment. We have examined the record in the present case and find the judgment to be adequately grounded, regardless of the chancellor's view of the premises.
Affirmed.
TERRELL, C.J., and THORNAL and O'CONNELL, JJ., concur.