#### WILLIAMS v. TAX ASSESSOR, et al.
No. 656422-E.

Circuit Court, Duval County.

May 5, 1967.

116

Edward McCarthy, Jr., Jacksonville, for plaintiffs.

Rogers, Towers, Bailey, Jones & Gay, Stallings & Marr, J. Henry Blount, Walter C. Shea and W. Joe Sears, Jr., all of Jacksonville, for defendants.

WILLIAM L. DURDEN, Circuit Judge.

*Final judgment:* This case is before the court upon application of the parties for the entry of a final judgment. The court has considered the factual and legal issues raised by the pleadings, the oral testimony, the documentary evidence and arguments submitted by counsel.

### Jurisdiction and parties

The jurisdiction of the court over the subject matter and the parties was not an issue in this cause.

### Statement of the case

The plaintiffs challenged the 1965 and 1966 real property ad valorem tax assessments on the property involved on the ground that the assessments were grossly in excess of the fair market value of the property and therefore arbitrary, illegal, unequal and discriminatory. The basic relief sought was that the court determine the correctness of the assessments, together with the amount of tax legally due by the plaintiffs on their property. After the commencement of the action, the tax assessor petitioned for and was granted leave to intervene as a party defendant. The

defendant tax assessor generally denied the allegations of the complaint and the issues were joined upon this basis and the case proceeded to trial upon the merits.

## Discussion by the court

The Supreme Court of Florida has said that the nomenclature of our assessment standard, "just valuation", as set forth in section 1 of article IX of the constitution of the state of Florida and the applicable statutes promulgated thereunder, is equivalent to and means "fair market value." Walter v. Schuler, 176 So. 2d 81 (Fla. 1965); Burns v. Butscher, 187 So. 2d 594 (Fla. 1966).

The standard has been identified. However, the precise methods by which the standard of fair market value is to be applied in regard to the assessing of all types of specific properties have not as yet been judicially determined. This court is now in the process of resolving the difficult determinations as to the application by the tax assessor of the fair market value yardstick to specific types of properties, each having its own individual characteristics and factual surroundings.

In fulfilling its duty, this court must now, on a case by case basis, look not only to our applicable decisions, but also to the already established standards and procedures to be followed in the field of professional appraising. This is necessary in order to judicially resolve the individual disputes arising as a result of the carrying out of the Supreme Court's mandate by the tax assessor.

As the subject property is unimproved land, the court holds that the market approach, subject to the court's discussion in regard thereto hereinafter, is the only one of the three primary appraisal approaches relevant to the determination of the case.

## Findings of fact

### Basic issue

The central issue for the court's determination is the fair market value of the subject property which has a present zoning classification different from the actual zoning and is not being put to a use consistent with the current trend of development of the great majority of similarly situated properties in the immediate area of the subject property.

### Subject property

The subject property consists of two contiguous parcels containing approximately two and one-half acres on the north side of Beach Boulevard (U.S. 90) at the northeast corner of the intersection of Shaw Road and Beach Boulevard. Transportation and accessibility to and from the subject property are excellent. The total property has a frontage of approximately 240 feet on Beach Boulevard with a depth of 426.25 feet on its westerly boundary line (east side of Shaw Road), and 498 feet along its easterly boundary line and approximately 88 feet on its northern boundary line along the southern shoreline of Big Pottsburg Creek. The property has satisfactory elevation with the exception of the northeast portion bordering on Big Pottsburg Creek. There is a drainage ditch running to the northeast across the property into Big Pottsburg Creek.

The property is unimproved and is being put to no specific use other than the easternmost portion in conjunction with the plaintiffs' residence which is located on the land immediately to the east of the subject property. The property is zoned to a depth of 200 feet north of Beach Boulevard Residence "C". The remaining portion of the property to the north is zoned Residence "A". The plaintiffs own the property in fee simple title.

### Evidence

One of the plaintiffs, Mr. A. M. Williams, testified that in his opinion the subject property was worth about the amount alleged in the complaint, which was $9,000 for parcel 2 and $2,300 for parcel 1. On cross-examination Mr. Williams stated that while he was in the real estate business, he was not an appraiser by profession and did not have knowledge of Beach Boulevard road front sales in the immediate area of the property involved. Mr. Williams further testified that to his knowledge neither he nor his wife had ever attempted to have the subject property rezoned for business purposes.

Mr. Richard Hamilton appeared as one of the three appraisers in behalf of the plaintiffs. Mr. Hamilton had appraised only parcel 2 and was of the opinion that it had a value of $8,100, based on a per acre value of $4,500 per acre.

Mr. Paul Akin, another appraiser for the plaintiffs, stated that he felt parcels 1 and 2 had a total value of $11,000. Mr. Akin utilized a waterfront front foot value for parcel 1, and a square foot value for the south approximately 200 feet of parcel 2, and a Shaw Road front foot value for the remaining northern portion of parcel 2, less cost of fill dirt and a culvert.

The third expert for the plaintiffs was Mr. J. Alvin Register. Mr. Register chose two sales which he considered to be comparable and arrived at a final per acre value for the subject property of $6,500. Applying this figure to the subject property and then deducting cost of fill, Mr. Register concluded that the subject property had a total value of $11,500.

Mr. Hamilton was of the opinion that the highest and best use of the property was for residential purposes. Mr. Akin felt that the highest and best use would have to be one that conformed to the present zoning. Mr. Register stated that the property's highest and best use would be limited to some form of residential or apartment development. All three of the plaintiffs' appraisers testified that in their opinion the value of the subject property had not changed since 1961.

Mr. Howard Kaufold, administrative assistant to the tax assessor, testified that the assessments on the subject property had been arrived at for the years 1965 and 1966 primarily based upon a consideration of the sales of road front properties in the immediate area of the subject property. The assessment for parcel 1 for the years 1965 and 1966 was $11,300. The assessment for parcel 2 for 1965 was $42,300, and for 1966, $38,000.

Mr. Frank Osborn testified as an expert for the defendant tax assessor. Mr. Osborn considered numerous sales of road front properties in the immediate area of the subject property, together with confirmed executed options and listings. The sales considered ranged from $142 per front foot to $397 per front foot. Mr. Osborn attributed a value of $200 per front foot to the subject property and applied a five year discount factor and allowance for ad valorem taxes in reaching his final value of $30,500 for the property involved. In his opinion, based upon the trend of development of road front properties and the predominant business zoning in the area of the subject property, the highest and best use in the immediate future would be for business or commercial purposes.

Defendant's exhibit no. 4 is a true and accurate copy of the official county zoning sheet depicting the immediate area east and west along Beach Boulevard (U.S. 90) of the subject property. An examination of this exhibit clearly reflects that the great majority of road front properties, other than an exception such as the subject property, in this area are presently zoned for business purposes. It is furthermore obvious that business or commercial growth proceeds from the urban to the suburban areas and that oftentimes such growth progresses along major

highways leading to and from the downtown city or primary urban area. Testimony was adduced that not only are there many existing businesses or commercial enterprises located on U.S. 90 in this area, but that a major access artery to the Jacksonville Expressway and new Commodore's Point bridge is presently under construction and will intersect U.S. 90 from the north approximately four blocks west of the subject property.

Mr. John Staninger testified that his company had purchased road front property approximately three blocks to the west of the subject property and thereafter applied for and obtained Business A-1 zoning of the road frontage portion to a depth of 300 feet.

Mr. Bob Harris, a member of the county zoning board for approximately the past seven years, stated that during his tenure in office, the Fourth Church of Christ, located on the northwest corner of the intersection of U.S. 90 and Shaw Road, had never opposed a business zoning application in this immediate area. A Mr. Banks testified that he was a member of the board of directors of the Fourth Church of Christ and that the church had protested several zoning applications some 13 years ago. The witness admitted that these particular properties are zoned for business purposes today. Again it is noted that defendants' exhibit no. 4 shows that except for a few isolated parcels, such as the subject property, the road front properties in this area are zoned for business purposes, and this will continue to be the trend in the immediate future.

### Discussion by the court

The position of all three of the plaintiffs' appraisers was essentially that due to the fact that the subject property was located across Shaw Road from an existing church, the property could not be rezoned for business purposes. This contention, coupled with that of no valuation change in the subject property since 1961, appear to be the reasons why none of the three tended to consider the sales of road front properties nor the trend in development and zoning of similar properties in the immediate vicinity of the subject property. Regardless of the approaches utilized — acreage, square foot, or front foot value — the end result of the plaintiffs' position is a final value of approximately $45 a front foot for the property involved.

In regard to the plaintiffs' position of no change in value since 1961, the record does not support this conclusion. Mr. John Staninger testified his company purchased some road front

property approximately four blocks away from the subject property in 1958 for a total consideration of $40,000, and sold this property in 1966 for $138,350. Mr. Osborn also considered the sale in 1964 of a parcel of road front land approximately three blocks from the subject property for $81,000. This same property resold in less than seven months for a total price of $104,000. Mr. Osborn's appraisal shows the purchase and then the resale of portions of the same tract of land in the immediate area of the subject land over a period from 1956 to 1966. The sales value of this particular property increased from $3,636 per acre in 1956 to $15,625 per acre in 1963 for an 8-acre tract, and $10,715 per acre for a 56-acre tract in 1966. It appears to the court that a consideration of the sales of roadfront properties in the immediate area of the subject property readily admits not only an active market but steadily increasing values.

### Applicable law and appraisal standards and procedures

With the aforementioned standard of fair market value as a predicate (Schuler v. Walter, Burns v. Butscher), it is now necessary to look at the facts of this case in light of our judicial decisions and recognized professional appraisal techniques.

The court is fully cognizant of the appellate decisions, as well as the language of sub-section (2) of section 193.021, Florida Statutes, forbidding any element of speculation, or conjecture as to future potential use on the part of the tax assessor.

The court is also aware of local circuit court decisions and a Supreme Court decision involving the rezoning of properties for business purposes located on major roads and highways in Duval County. Francis G. Williams, et al v. Bob Harris, et al, final decree entered January 4, 1966; Alva R. Hall, et al v. Bob Harris, et al and James E. Clements, et al, final order entered November 1966; Hammond v. Carlyon, 96 So. 2d 219 (1957).

As pointed out at the outset, the applicable criteria set forth in section 193.021, Florida Statutes, are basically the fundamental, broad or general points of consideration in arriving at the fair market value of a certain piece of property. However, it now becomes necessary to deal with more narrow points of application or refinement of these broader guideposts. To accomplish this, the court must look to the accepted authorities in the appraising field.

In a chapter dealing with initial appraising procedure entitled "Site Analysis", it is stated in *The Appraisal of Real Estate,* 4th

edition, by the Special Technical Committee of the Education Committee of the American Institute of Real Estate Appraisers, at page 109, as follows —

*"Zoning* — Zoning is a legally imposed restriction upon the uses of a site, but a site's highest and best use may not necessarily be any of the uses designated by a zoning ordinance. * * *

"If the land manifestly has more valuable use than that permitted by law and if there is a strong possibility that a change in its use will be permitted, then the appraiser can properly consider this element as a factor affecting its value just as a buyer or seller might consider it." *(The Appraisal of Real Estate;* American Institue of Real Estate Appraisers, 3rd ed., 1960, page 36.)

*The Encyclopedia of Real Estate Appraising,* by Edith Friedman, states in the chapter dealing with the gathering of data for an appraisal, at page 96 —

"District and Neighborhood Data.***

"No. 4. *Zoning and trend to changing use.* Changing use in the block where the subject property is situated is particularly significant. * * *

"No. 9. *Trends in business growth and occupancy."*

The courts have recognized that where there is a reasonable probability of a zoning change, it is a factor to be considered in determining value.

"It is generally held that although an ordinance may prohibit the use of the property for certain purposes at the time of condemnation, yet if there is a reasonable probability that the ordinance may be changed or an exception made, the value for that purpose as affected by the existing ordinance may be considered." State of Missouri, ex rel. State Highway Commission v. Williams, 289 S.W. 2d 64 at pages 66 and 67.

". . . an important caveat to remember in applying the rule is that the property must not be evaluated as though the re-zoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning." State, ex rel. Morrison v. McMinn, 288 Ariz. 261, 355 P. 2d 900.

The court recognizes that there may well be some fine distinctions between the future appellate decisions in Florida in the fields of eminent domain and ad valorem taxation. Nevertheless, both actions are bottomed upon the controlling premise of fair market value. In this regard and in a collateral manner, two Florida decisions are mentioned.

In the First District Court of Appeal decision reported at 100 So. 2d 67, the court adopted the so-called "Texas Rule" which permits consideration of other uses of property prohibited by the then existing zoning ordinance if the property is reasonably adaptable and for which it is, or in reasonable probability would become, available within a reasonable time. The court stated at page 69 —

> "The efficiency of the rule is apparent . . . It permits the trial court to admit evidence of the suitability and adaptability of the property under condemnation for a purpose prohibited by the then existing zoning ordinance."

This rule was reaffirmed in the district court of appeal's second decision found in 108 So. 2d 74 at page 83. Here, the First District Court of Appeal points out that the Second District Court of Appeal had adopted said rule in Swift & Company v. Housing Authority of the City of Plant City, 106 So. 2d 616 (1958).

Furthermore, our Supreme Court subsequently approved of said rule in its decision reported in 116 So. 2d 762, at page 766 —

> "Although we have determined that there is no conflict . . ., we deem it appropriate to observe that we find no fault with the First District Court of Appeal in adopting the so-called Texas rule."

### Discussion by the court

While clearly not placing the maximum value reflected by his road front sales upon the subject property, Mr. Osborn emphasized and considered the reasonable probability of acquiring a change in its zoning in the immediate future if desired by the owners. In short, considering its location, its condition, the trend of development in the area, and the zoning of neighboring road front properties, Mr. Osborn felt that its value to a willing buyer and willing seller in the market was $30,500.

When the factors heretofore mentioned are considered with regard to professional appraisal procedures, Mr. Osborn's final value cannot be said to be speculative or conjectural. The court

agrees with Mr. Osborn's approach and is of the opinion such procedure was correct in arriving at the market value of the subject property.

It is noted that the sales of similar properties in the immediate area of the subject property reflect values in excess of $200 per front foot. Mr. Osborn in his final value did not utilize a strict application of these front foot sales values, but rather, ultimately arrived at a value of approximately $127 per front foot.

The harmony of the zoning and commercial development trend of road front properties, together with the actual sales of road front properties, in the area of the subject property must be taken into account. It therefore appears to the court that the position of the plaintiffs' appraisers of substantial disregard of these factors, together with the sales of similar properties, cannot be sustained.

The record reflects a very active market in the subject area, and furthermore, that the plaintiffs own the two parcels directly adjoining the subject property. This element appears relevant in that Mr. Osborn's appraisal shows a recent sale of a large tract of land fronting on the north side of U.S. 90 just to the east of the subject property for a purchase price of $600,000.

The subject property has no specific use at present. Therefore, there is no issue in this case involving a situation where land is being used for one specific purpose and it appears that it should or could be used for another more valuable purpose. The question to be resolved herein is what a willing purchaser would pay a willing seller for the subject property considering and looking to (1) its size, (2) its location, (3) its condition, (4) the sales of road front properties in the immediate area, (5) its highest and best use in the immediate future, (6) the trend of development of similar properties, and (7) its present zoning, together with the reasonable probability of a change in its zoning if desired by the owners. It seems only logical to conclude that a prudent purchaser, as well as a prudent seller, are not going to ignore all of these relevant factors which appear quite applicable to the subject property in arriving at a proper market value.

### Conclusion

It seems logical to conclude that a specific piece of property can and should have only one fair market value at one specific time. This conclusion appears inevitable if a fair and equal tax roll is to be achieved.

The court holds that the record demonstrates that the values of road front properties in the immediate area of the subject property have increased over recent years.

Based upon the oral testimony and exhibits received in evidence, the court is of the opinion that the highest and best use for the subject property in the immediate future is for business or commercial purposes.

The plaintiffs have failed to establish that their property has a value of less than Mr. Osborn's appraisal. The court therefore finds and holds that the plaintiffs' property has a value of $30,500.

### Interest

The court finds that the additional amount of taxes which are due upon the assessed value determined by the court became due on April 1, 1966 in regard to the 1965 assessment, and on April 1, 1967 in regard to the 1966 assessment, and that the taxpayer should pay the statutory rate of 6% from those dates respectively in regard to each individual year's assessment to the date of the additional payments.

It is therefore adjudged that —

(1) The 1965 and 1966 final ad valorem real property assessments on the subject property as set by the assessor are grossly in excess of its fair market value and the illegal portion thereof should be set aside.

(2) The fair market value of the property as of January 1, 1965 and as of January 1, 1966 for ad valorem assessment purposes is $30,500.

(3) There is due and owing from the plaintiffs to the defendant tax collector the amount of taxes on this valuation, less the amount paid, plus interest at the rate of 6% on that balance from April 1, 1966, in regard to the 1965 tax assessment, and from April 1, 1967, in regard to the 1966 tax assessment, to the date of payment.

(4) The execution procedures provided for by the statutes of this state are stayed for a period of thirty days during which the taxpayer may make payments required by this judgment.

(5) As the taxpayers have received some of the relief which they requested, it is the determination of the court that the parties to this litigation should sustain their own costs and therefore costs are not assessed against any party.