ERVIN, Judge.
Appellants (defendants below) appeal a deficiency judgment in the amount of $815,-948.64 entered against them. They raise four points on appeal. Three were waived or consented to below and thus do not merit discussion. We conclude, however, that the expert opinion of an appraiser, based upon the opinion of an architect who was not called to testify, is incompetent to support the judgment. Therefore, we reverse and remand with directions.
On September 5, 1984, appellants and appellee entered into a loan agreement for the construction of a shopping center known as Lakeshore Place Shopping Center. As part of that transaction, Lakeshore Place, Inc., executed a purchase money mortgage and promissory note, and appellants Harrison and Hickey each executed a personal guarantee, for the repayment of that note. In May 1986, appellee brought an action for foreclosure and breach of the guarantee agreements. A judgment in foreclosure was entered for $3,115,948.64, and a foreclosure sale was held on December 18, 1986, at which appellee purchased the subject property for $100.00. Thereafter, appellee filed a motion for deficiency judgment against Harrison, Hickey and Lakeshore Place, Inc. At the hearing on this motion, appellee offered evidence of the fair market value of the property through its expert, Chandler. Despite appellant’s objections, the trial court permitted Chandler to testify regarding the alleged opinion of the architect of Lakeshore Place Shopping Center that the center’s design was unfit for its intended use. Specifically, Chandler testified:
Q. [Plaintiff’s counsel]: So, in a nutshell then your opinion as to fair market value as of December 18, 1986 would be—
A. [Chandler]: In the range of $2,275,-000.00 to $2,300,000.00.
Q. Okay. What in your opinion is the biggest problem with the shopping center as far as value is concerned?
A. The shopping center is poorly designed for its intended use. It has no display space facing the street. It’s hard to tell what tenants are in there. A directory sign is not totally sufficient to let you know what kind of tenants are in a shopping center. Driving into a shopping center of that nature in the beaches area is somewhat of an impulse decision for tourists traveling up and down the beach and the center that was built has all of its view and glass windows and everything facing the small lake that abuts the north side of the site and no windows facing the street side. And it’s ... the design of the facility, I think, led *714 to it becoming a distressed project and led to tenants vacating the space and not being able to make sufficient income to justify the rental rates and that type of thing.
He further testified that he is neither a design engineer nor an architect and that in the process of doing the appraisal, I did contact the architect that designed the facility and he concluded — [Objection intervened.]
# ‡ ⅝ % ⅜! 5⅜
The architect told me that in his opinion the building wasn’t ... the design was not good for its intended purpose. That he really did not wish to design the building exactly as it is. He advised Ms. Harrison that he thought that the facility would not be properly designed the way it is but that she felt like that’s the way that she would like to have it. In his words, he designed it the way she wanted it.
[The Court]: Have you found that’s a general answer by architects, when you question them about how in the hell did you put together this gingerbread ... and he said well that’s what the owner wanted, right?
[Chandler]: It’s not unusual.
Appellants introduced testimony through their expert appraiser that the property was worth $3,747,000 on the date of sale, as well as the testimony of the owner, Harrison, that the fair market value on the date of sale was $3,750,000.
The trial judge rejected the opinion of appellant’s expert and accepted instead Chandler’s opinion, finding that “the location and design of the shopping center together with other factors considered by Mr. Chandler compels the Court to find that the property was valued at $2,300,000 on December 18, 1986.” The architect was not called as a witness in this case, but his post-trial affidavit makes clear that the project’s design was conceived by him and remained unchanged through final construction, and that, in his opinion, the project was well designed for its intended purpose.
In Wright v. State, 348 So.2d 26 (Fla. 1st DCA), cert. denied, 353 So.2d 679 (Fla. 1977), this court held that fundamental error was committed when an expert testified beyond his qualifications. Furthermore, in Prohaska v. Bison Co., 365 So.2d 794, 797 (Fla. 1st DCA 1978) (holding that it was error to permit an expert to testify beyond his area of expertise), this court observed that error cannot be considered harmless when the testimony of the expert relied upon is the only testimony in the record which supports the finding of the trial court. Moreover, in Urling v. Helms Exterminators, Inc., 468 So.2d 451, 456 (Fla. 1st DCA 1985) (on rehearing), this court held that where there is an incompetent predicate for an expert’s opinion, a new trial is required. See also Bunyak v. Clyde J. Yancey & Sons Dairy, 438 So.2d 891, 893 (Fla. 2d DCA 1983), review denied, 447 So.2d 885 (Fla.1984) (Section 90.704, Florida Statutes, does not permit an expert witness in one field to testify as to the expert opinion given to him by another expert).
The only other evidence conceivably directed to the issue of design was the court’s sua sponte view of the site, which cannot serve as an independent basis for judgment. Atlantic Coast Line R.R. v. Hendry, 112 Fla. 391, 150 So. 598 (1933). See also Hammond v. Carlyon, 96 So.2d 219, 222 (Fla. 1957) (while basing a judgment upon a view of the premises was error, it was not reversible error, provided there was evidence of record which was otherwise sufficient to support the judgment).
Therefore, because Chandler’s opinion was incompetent to support the judgment, we REVERSE and REMAND with directions that the court determine the value of the subject property based upon competent evidence placed before it.
ZEHMER, J., concurs.
WENTWORTH, J., agrees with conclusion.