FEDERAL DEPOSIT INSURANCE
CORPORATION,
Plaintiff–Appellee,

v.

Nicholas H. MORLEY; Interterra, Inc., a Delaware Corporation; Regina Interiors, Incorporated, a Florida Corporation; and City National Bank of Miami, a national bank, as Trustee of a land trust known on the Trustee's records as Trust No. 5003138. Defendants–Appellants Third Party Plaintiffs,

Continental Illinois National Bank and Trust Co. of Chicago a National Banking Association, Third Party Defendant.

No. 90–5187.

United States Court of Appeals,
Eleventh Circuit.

Oct. 30, 1990.

rights of any person to purchase and occupy a home because of that person's race.

James Joseph Breen, Alfred Aronovitz, Atlee W. Wampler, III, Kendall Coffey, Coffey, Aragon, Martin, Burlington & Serota, P.A., Miami, Fla., for defendants-appellants third party plaintiffs.

Stuart J. McGregor, Miami, Fla., Lise T. Spacapan, Kirkland & Ellis, Chicago, Ill., for plaintiff-appellee.

Before CLARK, Circuit Judge, MORGAN and HILL*, Senior Circuit Judges.

HILL, Senior Circuit Judge:

This appeal concerns the district court's award of a deficiency judgment resulting from the default on a $37 million construction loan. Appellants, the mortgagor and guarantors of the loan, as well as a trustee,

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

challenge the district court's refusal to permit live testimony on disputed facts relevant to the amount of the deficiency. Appellants also raise several other issues. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In April, 1981, appellant Regina Interiors, Inc. ("Regina") obtained a thirty-seven million dollar construction loan from Continental Bank ("Continental"), guaranteed by appellants Nicholas H. Morley ("Morley") and Interterra, Inc. ("Interterra"). Appellants failed to repay the loan, and the Federal Deposit Insurance Corporation ("FDIC") acquired the loan from Continental in February, 1987, pursuant to 12 U.S. C.A. § 1823 (West 1989). In March, 1987, the outstanding loan balance approached thirty-five million dollars, and FDIC instigated an action to collect on the notes, to foreclose on the real and personal property used as collateral for the loans, and to collect on the guaranties. The appellants raised several affirmative defenses, which the district court struck. Upon FDIC's motion for summary judgment against all defendants, the court noted that "[d]efendants [did] not dispute that they have failed to make the required payments on the loans" and granted FDIC's motion.[1]

FDIC then sought entry of final judgment on all four counts of the complaint against all defendants, including the guarantors. The district court entered its final judgment of foreclosure on September 29, 1988. That judgment adjudicated the monetary amount due on the loan ($38,787,-277.83), provided for sale of the mortgaged property by foreclosure and, rather than granting final judgment against the guarantors, reserved jurisdiction to adjudicate any monetary deficiency.

The FDIC purchased the mortgaged property with a bid of $14.585 million at a public foreclosure sale on November 18, 1988.

### A. FDIC's Motion for a Deficiency Judgment and the Court's Appointment of an Independent Appraiser.

On December 9, 1988, FDIC moved for a deficiency judgment, seeking a sum equal to the difference between the amount of the outstanding debt and the foreclosure proceeds. FDIC also submitted documentary evidence to support its argument that its $14.585 million bid reflected the fair market value of the property for deficiency purposes. That evidence included the following:

1. A copy of the receiver's valuation of the property, stating that its fair market value was $18,000,000.
2. A copy of an update appraisal performed by Lee Chastain, concluding that the property's fair market value was $17,000,000.
3. A copy of the assessment by the Dade County Tax Commissioner, assessing the property's value at $15,477,230.
4. A letter from the receiver indicating that $1.45 million in taxes were owed.
5. A written offer, accepted by defendants, to sell the property for $21.6 million.

Defendants, by contrast, submitted the affidavit of Ronald Ames, of Ames Appraisal Service, who appraised the property's value at $37 million.

Declining appellants' request to hold an evidentiary hearing at which the parties could present evidence and witnesses, the trial court heard oral argument on January 31, 1989, and determined that it would inquire further into the question of fair market value by appointing an independent appraiser. The parties agreed on an independent appraiser, the firm of Dixon and Friedman, and the court appointed that firm to evaluate the property.

### B. Further Submissions and Argument Concerning the Deficiency.

Dixon and Friedman completed its appraisal on April 28, 1989, and the court indicated that it would hold a hearing shortly after that date. The court's order

---

1. We affirmed the grant of summary judgment in *FDIC v. Morley,* 867 F.2d 1381 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 41 (1989).

invited the parties to submit additional briefs and memoranda and also noted that "the court sees no need for a full evidentiary hearing on the question of the deficiency." Both parties together filed a total of five briefs and also offered evidentiary submissions, including (1) the Dixon and Friedman appraisal, (2) the Ronald Ames appraisal, (3) an affidavit by John P. Rice in opposition to the deficiency judgment, and two depositions.

On August 17, 1989, the court, accepting Dixon and Friedman's estimate of value, entered a deficiency judgment for $16,577,-401.85.

## C. The Motions for Reconsideration and Additional Evidentiary Submissions.

Defendants moved for reconsideration, questioning the trial judge's reliance on the Dixon and Friedman appraisal. The trial court, *sua sponte*, deferred ruling on the motions for reconsideration and granted defendants leave to depose Dixon and Friedman. The defendants deposed Thomas J. Dixon, and then filed supplemental memoranda challenging the Dixon and Friedman report. The defendants also submitted: (1) the transcript of Dixon's deposition; (2) all exhibits from the deposition; and (3) the Ronald Ames and Richard Blitstein affidavits. The FDIC, in turn, filed a memorandum and an appendix containing numerous evidentiary submissions, including: (1) an appraisal update by Lee Chastain; (2) a "development analysis" by Trammell Crow; (3) a property evaluation by Alicia Cervera; (4) excerpts from the receiver's valuation; (5) excerpts from the Ronald Ames appraisal; (6) a critique by Ronald Ames of the Chastain appraisal and receiver's report; and (7) excerpts from the Dixon and Friedman appraisal. The FDIC also submitted portions of various deposition testimony.

## D. The District Court's Reaffirmance of its Deficiency Judgment.

On January 31, 1990, the district court entered an Order denying the defendants' motions for reconsideration, and on February 16, 1990, the court entered an amended deficiency judgment in order to set forth in the judgment the names of each defendant, again setting the sum of $16,577,401.85 as the amount of the deficiency. In its January Order, the court emphasized that it had based its August, 1989 decision on *all* of the evidence the parties submitted. It also concluded that Dixon and Friedman "relied on generally accepted appraisal methodology," and that its appraisal "derived from sound principles and fell well within the range of valuation estimates provided by the other experts in this case."

## II. DISCUSSION

### A. The Request for an Evidentiary Hearing.

■ The district court properly applied the test set forth in *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), in deciding to apply Florida substantive law to the deficiency issue.[2] In contrast to states that measure a deficiency judgment based on the amount of the successful foreclosure sale bid, Florida law requires a court to undertake a two-part inquiry to determine the amount of deficiency due a mortgagee. First, the court must determine the difference between the amount of the outstanding debt and the fair market value of the property. *Norwest Bank Owatonna, N.A. v. Millard*, 522 So.2d 546, 547 (Fla.Dist.Ct.App.1988). Second, the court must ascertain whether any "equitable considerations" exist that war-

2. In *Gunter,* we set forth a two-part inquiry to determine whether federal or state law would apply to an action involving the FDIC. The first step is to determine whether federal or state law applies to the instant case. If federal law applies and no rule of decision exists, then the court must balance three factors in determining whether to formulate a uniform federal rule or adopt state law as the federal rule of decision: "[1] whether the federal program was one which by its nature required nationwide uniformity, [2] whether adopting the state law would frustrate the specific objectives of the federal program, and [3] whether applying a federal rule would disrupt commercial relations predicated on state law." 674 F.2d at 868 (following *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–729, 99 S.Ct. 1448, 1458–1459, 59 L.Ed.2d 711 (1979)).

rant the reduction of the actual deficiency. *Id. See also Baxter v. Kobs*, 451 So.2d 955, 955 (Fla.Dist.Ct.App.1984) (reversing trial court's denial of a deficiency judgment against co-maker of note because no equitable considerations supported the denial).

▇▇ Appellants contend that the district court erred in denying their request for an evidentiary hearing on the issues related to the application of the above test. Appellants first contend that Florida law mandates such a hearing.[3] We disagree. The cases appellants cite [4] do not *require* the holding of an evidentiary hearing on a deficiency motion following a foreclosure. Florida law permits a court in a foreclosure action to enter a deficiency decree in its "sound judicial discretion." Fla.Stat.Ann. § 702.06 (West 1976). The exercise of that discretion will not be disturbed absent abuse. *Community Bank of Homestead v. Valois*, 1990 WL 49845 (Fla.Dist.Ct.App. April 24, 1990); *Semler v. Citicorp Sav.*, 541 So.2d 1369, 1369 (Fla.Dist.Ct.App.1989). Rather than compelling an additional, lengthy procedure, the rationale behind section 702.06 has been described as "being a means of avoiding the expense and inconvenience of an additional suit at law to obtain the balance of the obligation owed by a debtor." *Timmers v. Harbor Fed. Sav. & Loan Ass'n*, 548 So.2d 282, 283 (Fla.Dist.Ct.App.1989) (citations omitted).

▇▇ Morley further contends that his status as guarantor, as opposed to mortgagor, entitles him to a trial on the deficiency issues. In support of this position, he cites *Hobbs v. First Nat'l Bank*, 480 So.2d 153 (Fla.Dist.Ct.App.1985).[5] In *Hobbs*, endorsers of a mortgage note who were not parties to the mortgage appealed from an order denying their demand for a jury trial in a deficiency proceeding following foreclosure of the mortgaged property. Concluding that the issues to be tried in the deficiency proceeding against the endorsers were legal, as opposed to equitable, the court found that the endorsers were entitled to a jury trial on those issues. *Id.* at 156. *Hobbs* does not support Morley's position, however, because the endorsers there had not been found liable by summary judgment. In the instant case, by contrast, the district court granted summary judgment on all four counts of FDIC's complaint, against *all* defendants, and we affirmed that grant.[6] The guarantors in the present case thus had their day in court and had been found liable under the guaranties prior to the deficiency proceeding.

▇▇ Appellants also attack the denial of an evidentiary hearing on due process grounds. Florida law requires that defendants in deficiency proceedings receive timely notice and an opportunity to be heard. *NCNB Nat'l Bank v. Pyramid Corp.*, 497 So.2d 1353, 1354 (Fla.Dist.Ct. App.1986). *See also Coffrin v. Sayles*, 128 Fla. 622, 175 So. 236, 238 (1937) ("deficiency decree may be entered upon motion or other appropriate pleading filed after confirmation of sale, and notice given to defendant, giving defendant an opportunity to be heard and to contest the motion"). Similar-

---

**3.** FDIC did not argue on appeal that a federal rule of procedure applies to the issue of what sort of "hearing" must be available before a trial court renders a deficiency judgment. We thus do not address the question whether, even assuming Florida has a rule that an evidentiary hearing must be granted, this rule applies in federal court since it seems to be procedural and not substantive.

**4.** *See, e.g., Harrison v. Savers Fed. Sav. & Loan Ass'n*, 549 So.2d 712 (Fla.Dist.Ct.App.1989); *Norwest Bank Owatonna, N.A. v. Millard*, 522 So.2d 546 (Fla.Dist.Ct.App.1988); *NCNB Nat'l Bank v. Pyramid Corp.*, 497 So.2d 1353 (Fla.Dist.Ct.App. 1986); *Merrill v. Nuzum*, 471 So.2d 128 (Fla. Dist.Ct.App.1985); *Trustees of Central States,*

*Etc. v. Indico Corp.*, 401 So.2d 904 (Fla.Dist.Ct. App.1981); *Fara Mfg. Co., Inc. v. First Fed. Sav. & Loan Ass'n*, 366 So.2d 164 (Fla.Dist.Ct.App. 1979); *Hamilton Inv. Trust v. Escambia Devs. Inc.*, 352 So.2d 883 (Fla.Dist.Ct.App.1977).

**5.** Morley also cites other cases in support of this proposition. *See, e.g., Gottschamer v. August, Thompson, Sherr, Clark & Shafer, P.C.*, 438 So.2d 408, 409 (Fla.Dist.Ct.App.1983); *Provident Nat'l Bank v. Thunderbird Assocs.*, 364 So.2d 790 (Fla.Dist.Ct.App.1978). These cases, however, do not *require* a trial.

**6.** *FDIC v. Morley*, 867 F.2d 1381 (11th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 75, 107 L.Ed.2d 41 (1989).

ly, we have said that due process requires the opportunity to be heard at a meaningful time and in a meaningful manner. *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1387 (5th Cir. Unit B Jan.1981) (citations omitted). *See also Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981) (fundamental requirement of due process is meaningful opportunity to be heard at meaningful time), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Parties entitled to such process cannot, however, choose the precise process they desire. Due process is not a rigid concept. Rather, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir.1987) (citations omitted). Procedures providing less than a full evidentiary hearing have often satisfied due process. We note, for example, the Tenth Circuit case of *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir.1984). In *Jones*, the Tenth Circuit addressed the issue of the entitlement to an evidentiary hearing in the context of the district court's approval, over the objection of a shareholder, of a settlement agreement in a shareholder's derivative suit. As the Tenth Circuit aptly pointed out, "[t]he failure to conduct an evidentiary hearing when all parties concerned with the settlement had notice of the settlement hearing, the opportunity to be heard, and access to the fruits of detailed discovery, is not a violation of due process." *Id.* at 325.[7] It is consequently necessary to assess the nature of appellants' interest in an evidentiary hearing.

A trial judge applying Florida law has no right to enter a deficiency decree in an amount greater than the amount of the indebtedness secured by the final judgment of foreclosure less the amount for which the property is sold. *Gottschamer v. August, Thompson, Sherr, Clark & Shafer, P.C.*, 438 So.2d 408, 409 (Fla.Dist.Ct.App. 1983) (citing *Provident Nat'l Bank v. Thunderbird Assocs.*, 364 So.2d 790 (Fla. Dist.Ct.App.1978)). Thus, any discretion the judge exercises in determining fair market value and in weighing equitable considerations can only benefit a mortgagor or guarantor by reducing the size of the deficiency. Appellants hence were in a situation where the deficiency proceeding was not to determine whether to take property from them, but rather to determine how much to give them.

In light of the nature of the deficiency proceeding, we find that appellants received sufficient process. Between the time that FDIC moved for a deficiency judgment (December 9, 1988) until the time when the district court entered its Deficiency Order (August 17, 1989), the district court repeatedly urged the parties to submit evidence relevant to the amount of the deficiency, and the parties did so. As outlined in section I of this opinion, subsequent to FDIC's motion for a deficiency judgment, FDIC submitted appraisals by its own unilaterally retained experts and by the Dade County Tax Commissioner, as well as an offer to sell the property accepted by appellants. Appellants, too, submitted the affidavit of their own expert, Ronald Ames. After the district court heard oral argument on January 31, 1989, the parties agreed on an independent appraiser who would also submit to the court

---

7. Other cases also hold that due process does not require a full evidentiary hearing. *See, e.g., Gorman v. University of Rhode Island*, 837 F.2d 7, 14 (1st Cir.1988) ("In fostering and insuring the requirements of due process ... the courts have not and should not require that a fair hearing is one that necessarily must follow the traditional common law adversarial method. Rather ... the question presented is whether ... the individual has had an opportunity to answer, explain, and defend."); *Kunzelman v. Thompson*, 799 F.2d 1172, 1177 (7th Cir.1986) ("[a] full evidentiary hearing is not always nec-

essary to provide due process protection"); *Toney–El v. Franzen*, 777 F.2d 1224, 1229 (7th Cir.1985) ("due process does not require a full blown adversarial hearing in every situation"), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986); *Williams v. Wallis*, 734 F.2d 1434, 1438 (11th Cir.1984) ("[d]ue process does not always require an adversarial hearing"), *reh'g denied*, 740 F.2d 979 (11th Cir.1984); *Sullivan v. Carignan*, 733 F.2d 8, 9 (1st Cir.1984) ("a full judicial-type hearing is not always required" to satisfy due process).

an estimate of the property's value, Dixon and Friedman. In addition to receiving the Dixon and Friedman appraisal, the district court also invited the parties to submit additional briefs and memoranda. Appellants took advantage of this opportunity, submitting an appraisal by Ronald Ames and an affidavit of John P. Rice in opposition to the deficiency judgment. FDIC also made further submissions. When the district court rendered its deficiency judgment in August, 1989, in addition to having heard oral argument twice, the court had before it five briefs, the independent Dixon and Friedman appraisal, appraisals rendered by the parties' own unilaterally retained experts, and as the district court recited in its order denying defendants' motions for rehearing, "a welter of appendices, affidavits, deposition transcripts, and other documents bearing on the matter at hand." According to the district court, it "carefully reviewed *all* of these materials."

Subsequent to its Deficiency Order, the trial court afforded appellants further procedural safeguards. After appellants moved for reconsideration, the court granted them leave to depose Dixon and Friedman and to file a third set of briefs in support of their respective positions. Appellants took advantage of this offer, deposing Thomas J. Dixon, filing supplemental memoranda challenging Dixon and Friedman's report, and submitting the transcript of Dixon's deposition, all the exhibits from the deposition, and affidavits from Ronald Ames and Richard Blitstein. FDIC also filed a memorandum and an appendix containing numerous evidentiary submissions.

As counsel for appellants admitted at oral argument before this Court, appellants were given the opportunity to submit all that they wished to submit, and they availed themselves fully of this opportunity. In addition to the other evidence submitted, having been permitted to cross-examine any witness they chose by deposition and to present the evidence and argument to the district court, the defendants ended up taking a total of 15 depositions, submitting four full transcripts to the district court, and filing eight briefs on the deficiency issue. By the time the district court denied appellants' motions for reconsideration on January 31, 1990, the court consequently had reviewed a cornucopia of data.

In sum, because Florida law does not mandate such a hearing and appellants received sufficient process, we hold that the district court did not abuse its discretion by refusing to conduct a full-blown evidentiary hearing.

## B. *Other Issues.*

Appellants also raise a number of other issues on appeal. These issues warrant little discussion. Appellants assert that it is unfair for the FDIC to secure a recovery in excess of the amount it paid for the loan and that the district court should thus have used its equitable powers to prevent such a recovery. We review the district court's determination for abuse of discretion,[8] and find none. Appellants also contend that the district court erred in refusing to permit them to amend their affirmative defenses to include fraud as an equitable defense in the deficiency question. Fed.R. Civ.P. 15(a) governs a party's right to amend, and we review a district court's denial of leave to amend for abuse of discretion. *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir.1990). We find no abuse.

Appellants further argue that the district court erred in utilizing a wholesale bulk sale standard of valuation rather than an individual retail sales standard. Trial judges are given discretion to determine fair market value, and we review only for an abuse of that discretion. *Peoples Fed'l Sav. & Loan v. Shoreline Garden*, 538 So.2d 864, 866 (Fla.Dist.Ct.App.1988), *review denied*, 542 So.2d 1334 (Fla.1989); *Savers Fed'l Sav. & Loan v. Sandcastle Beach*, 498 So.2d 519, 522 (Fla.Dist.Ct.App. 1986). Again, we detect no abuse. Contrary to appellants' contentions, we also discern no abuse in the trial court's sub-

---

**8.** See *Community Bank of Homestead* and *Sem-* *ler,* cited in Part II.A. of this opinion.

tracting of back taxes to arrive at the fair market value of the property.

Appellants' contention that the district court improperly certified the deficiency judgment and the amended deficiency judgment pursuant to Fed.R.Civ.P. 54(b) is also without merit. Our review is again limited to determining whether the district court abused its discretion, *Explosives Supply Co. v. Columbia Nitrogen Corp.*, 691 F.2d 486, 486 (11th Cir.1982), and we find no such abuse.

For the foregoing reasons, we AFFIRM the judgment of the district court.