358 So.2d 1370 (1978)
TYMBER SKAN PROPERTIES LTD., Donald L. Myrick and Betty L. Myrick, Appellants,
v.
LUTHERAN MUTUAL LIFE INSURANCE COMPANY OF WAVERLY, IOWA, an Iowa Corporation, Appellee.
No. 77-385.
District Court of Appeal of Florida, Second District.
April 12, 1978.
As Modified On Denial of Rehearing May 24, 1978.
*1371 Harold S. Wilson, Clearwater, for appellants.
Leslie D. Franklin and David E. DeSerio, St. Petersburg, for appellee.
OTT, Judge.
This appeal is from a post final summary judgment order of the trial court in a mortgage foreclosure action. We reverse in part and affirm in part as more specifically appears below.
In due course final summary judgment was entered for the mortgagee (appellee). There was no appeal therefrom nor were any timely and appropriate postjudgment motions filed. The final summary judgment was therefore conclusive as to all matters involved in the litigation except as to those matters properly and expressly reserved therein for subsequent determination. All of the parties are limited or bound by the terms of the final judgment both as to what is finally adjudicated and as to that which was or could be the subject of postjudgment consideration. The final judgment cannot be otherwise supplemented or modified by either party at this point.
The property foreclosed upon consisted of a total of 57 rental units and certain furnishings, appliances, fixtures and equipment. The indebtedness was secured by a real property mortgage, a security agreement and financing statement and an assignment of leases and rents. A receiver was appointed to manage and operate the rental property pending the foreclosure proceedings.
The dates and actions pertinent to this appeal are as follows:

1. November 19, 1976 Final Summary Judgment of
 foreclosure was entered.
2. November 25, 1976 Notice of Sale was published.
3. December 13, 1976 The clerk's sale was held and
 clerk's certificate of sale was
 filed.
4. January 6, 1977 The clerk filed his Certificate
 of Title.
5. January 14, 1977 Application filed for approval
 of receiver's accounting, for direction
 as to disbursement of
 remaining funds and for discharge
 of the receiver and his
 surety.
6. January 26, 1977 Hearing was held on receiver's
 application.
7. January 31, 1977 The order on the receiver's application
 was entered.
8. March 1, 1977 Notice of appeal from order of
 January 31, 1977.

The Notice of Sale and Certificate of Title described the property to be sold as follows:
Block "N", Re-subdivision of RICHEY BAY PARK, as shown on plat recorded in Plat Book 4, page 43, Public Records of Pasco County, Florida.
*1372 This is conclusive as to the property sold at the judicial sale and ultimately titled in the mortgagee (purchaser at the sale). The mortgagee therefore secured no ownership interest in the rentals except those accruing subsequent to securing the title to the rental property.
The mortgagee became the purchaser at the foreclosure sale upon its bid in the exact amount of the mortgage debt fixed in the summary final judgment, namely, $714,940.84. The mortgagee also filed its certificate of payment of the clerk's fee for sale and publication costs.
Approximately eight days after the Certificate of Title was filed the receiver filed his final accounting (for the period ending December 31, 1976) and applied for discharge of himself and his surety. This accounting was subsequently supplemented to cover the period from January 1, 1977 through January 6, 1977.
After notice to all parties and a hearing the court entered an order dated January 31, 1977 approving the receiver's final accounting (as supplemented), directing the receiver to turn over to the mortgagee (purchaser of the mortgaged real property) the net proceeds of the receivership remaining in his hands and discharging the receiver and his surety.
The mortgagor complains of this post final summary judgment order in the following particulars:
(1) The approval of certain disbursements and receipts in the receiver's accounting as follows:
a. receiver's fees in the amount of $2,500.00
b. insurance premium in the amount of $2,716.00
c. accrued but unpaid sewage fees in the amount of $2,990.52
d. certain bills received and actually paid by the receiver between December 31, 1976 and January 6, 1977 which totaled $2,045.96
e. the inclusion (in the receiver's receipts) of only 20% of the January rents as rental receipts of the receivership  in other words  the proration of January rental receipts to cover only the period January 1, 1977 thru January 6, 1977.
(2) In ordering the receiver to pay the net proceeds of the receivership over to the purchaser at the mortgage sale.
With reference to (1)(a) and (b) it was established at the hearing that these items were duplications of specific items allowed to the mortgagee in the final judgment as part of the secured indebtedness fixed therein. It was not error to allow or approve these disbursements from the receiver's funds since the mortgagee, although having claimed and been allowed these items as part of the secured indebtedness fixed in the final judgment and its bid at the sale of real property, had not actually paid them out. It was error, however, not to require the receiver's account to be reimbursed therefor by the mortgagee.
With reference to (c) a close question is presented. This amount was listed as "[t]o be placed in escrow for payment of sewer fees accrued during the term of the Receivership." In other words, no actual payment of these charges had been made by the receiver. According to the receiver's statement of income and expenses for the period December 31, 1976 through January 6, 1977 "[t]he charge for sewer service has not been paid due to problems with the Receiver of the sewer plant. The sewer charges may be less, but should be no more than the listed escrow monies." No showing was made at the hearing that sewer charges were improperly or unnecessarily incurred by the receiver in the operation of the rental property nor was there any showing that the sewer charges in question were not incurred during the period of the receiver's control. Consequently, it is our opinion, and we so hold, that no error has been made to appear in this action of the trial court. Upon remand, however, the trial court should direct that such sum be held in the registry of the court pending the determination of the actual amount payable for such services during the term of the receivership and subject to its order of disbursement thereof accordingly.
*1373 The only attack on items (1)(d) and (e) at the hearing was predicated upon the mortgagor's position that the receiver was not entitled to pay any bill in the period from January 1 to January 6 and, as to rentals, that the mortgagor was entitled to the benefit of all rentals actually in the hands of the receiver at the time the receivership terminated. In paragraph 12 of the final judgment the trial court specifically directed that "the Receiver's term of full control shall not extend beyond the filing of the Certificate of Title." The Certificate of Title was made and filed on January 6, 1977. Mortgaged property remains the property of the mortgagor until duly and finally divested of the ownership thereof  normally the order confirming the sale of the mortgaged property but in this case, the date of the clerk's Certificate of Title, January 6, 1977. See Shavers v. Duval County, 73 So.2d 684, 687 (Fla. 1954); Hoffman v. Semet, 316 So.2d 649, 651 (Fla. 4th DCA 1975); 22 Fla.Jur., Mortgages §§ 107, 108 (1958). All legitimate expenses of the receivership up to January 6, 1977 are properly allowed. We hold that no error has been made to appear as to the trial court's approval of these two items.
As stated above, the mortgagee acquired no ownership interest in the real property or the rentals derived therefrom prior to acquiring ownership of the real property on January 6, 1977. The trial court therefore erred in ordering that any remaining proceeds of the receivership be paid over to the purchaser at the foreclosure sale, except to the extent applicable to the secured indebtedness as hereafter provided. As previously noted, the real property together with the improvements thereon was all that was ordered to be sold and noticed for sale at the public sale. The assignment of the rentals was only as further security for the payment of the secured indebtedness. The final judgment detailed the items comprising the secured indebtedness and fixed the same at $714,940.84 at that time. It further provided that interest would accrue after the date of the final judgment at the rate of 6% per annum. In paragraph 8 of the final judgment the court directed that the mortgagee's secured indebtedness shall be the sum fixed in the judgment ($714,940.84) "plus interest hereafter accruing ... and costs advanced per paragraph 7 hereof... ." (Paragraph 7 of the final judgment specifically delineated these additional costs as "the cost of publishing the Notice of Sale and the Clerk's fee of $15.00 for making the sale... .") Paragraph 9 of the final judgment then provided that the total bid of the mortgagee (assuming it was high bidder) would be credited against the total indebtedness "secured by said mortgage, financing statement, assignment of leases and other documents... ." We hold that the total secured indebtedness must be calculated pursuant to the above provisions of the final judgment and the actual bid of the mortgagee then credited against such total secured indebtedness. If there is any deficiency remaining it is payable out of the proceeds, if any, remaining in the receiver's account pursuant to the reservation of jurisdiction by the trial court as to the receiver's receipts, disbursements and disposition of any remaining funds.
We point out that in paragraph 12 of the final judgment the trial court also reserved jurisdiction to determine what fees, if any, should be allowed the attorneys for the receiver. So far as the record reveals this still remains unresolved but could be properly allowed by the trial court out of the receiver's funds.
Two other items should be disposed of. Appellee/mortgagee asserts that it is entitled to be paid the costs of surtax and documentary stamps on the deed in the amount of $2,931.50 and to attorney's fees for its attorney in the amount of $4,000 for services performed after the date of judgment. Apparently the payment of these items was to come out of the funds in the hands of the receiver.
The final judgment is silent as to who pays the documentary stamps if the mortgagee is the successful bidder and clearly they are not adjudicated as a part of the secured indebtedness. Appellee has *1374 failed to cite any authority to this court that the purchaser is entitled to reimbursement for documentary stamps in the absence of such a provision in the final judgment. The final judgment specifically directs that any successful bidder other than the mortgagee must pay the documentary stamps in addition to his bid. It would appear that there is no reason why the mortgagee should be treated differently than any other bidder. Thus, the mortgagor must prevail on this point.
With reference to the mortgagee's attorney's fees the final judgment provided "Attorneys' fees for Plaintiff's attorneys [$25,000.00] which said sum this Court, on the basis of affidavits and testimony presented in open court, finds and determines to be reasonable and just." However, with reference to the period at issue  namely, the period from the date of judgment to the date of the hearing on the receiver's fees  there was no provision in the final judgment. Since no jurisdiction was retained for such purpose the mortgagor must prevail on this point.
With reference to the rights of the Jem Aluminum Products, Inc. we affirm the trial court's determination that its lien was against the real property only, was inferior to the lien of Lutheran Mutual Life Insurance Company and was wiped out by the foreclosure of the superior lien. Accordingly, Jem Aluminum's appeal is not well taken.
The order of the trial court of January 31, 1977 is set aside and the cause remanded for further proceedings and the entry of an order consistent with this opinion.
BOARDMAN, C.J., and SCHEB, J., concur.