538 So.2d 864 (1988)
PEOPLES FEDERAL SAVINGS & LOAN ASSOCIATION OF TARENTUM, PENNSYLVANIA, a Pennsylvania Corporation, Appellant,
v.
SHORELINE GARDEN TOWNHOMES, II, LTD., a Georgia Limited Partnership; James W. Standard; Steven L. Renda; Jong-in Kim; Daniel W. Hollis; Joe-Lin Investments, Ltd.; C. Leonard Simpson; David J. Hargas; Harlan L. Hanson; Phillip E. Searcy; Roy C. Mallady, Jr.; and W.R. Bean, Appellees.
No. 87-1435.
District Court of Appeal of Florida, First District.
November 10, 1988.
Rehearing Denied December 13, 1988.
W. Wade Wallace, of Bartlett & Wallace, Destin; and Christine Rieger Milton and William S. Graessle, of Mahoney Adams Milam Surface & Grimsley, P.A., Jacksonville, for appellant.
Benjamin W. Redding, of Barron, Redding, Hughes, Fite, Bassett & Fenson, *865 P.A., Panama City, for appellee Steven L. Renda.
Denis L. Durkin and Beth J. Willard, of Baker & Hostetler, Orlando, and James E. Moore, of Moore & Moore, Jacksonville, for appellees Joe-Lin Investments, Ltd., Jong-In Kim, Harlan L. Hanson, Philip E. Searcy, Roy C. Mallady, Jr., and W.R. Bean.
E. Robert Meek, of Commander Legler Werber Davies Sadler & Howell, Jacksonville, for appellees Daniel W. Hollis and David J. Hargas.
SHIVERS, Judge.
Appellant Peoples Federal Savings & Loan Association (Peoples) appeals a deficiency decree entered by the trial court in a foreclosure suit brought by Peoples against the appellees. Finding competent substantial evidence to support the trial court's findings, we affirm.
In 1982, appellees James W. Standard and C. Leonard Simpson formed a partnership known as Shoreline Garden Townhomes, II, Ltd., for the purpose of building, owning, and operating 21 townhouse units in Destin, Florida. Financing for the project was obtained initially from Third National Mortgage Company of Nashville, Tennessee, in the form of a negatively amortized, adjustable rate loan, personally guaranteed by the two general partners (Standard and Simpson) and by each of the nine limited partners of the partnership. Subsequent to the loan's closings in January and April of 1983, Third National assigned its interest in the loan to appellant Peoples. The partnership defaulted on the loan in December of 1984 and Peoples filed a 32-count complaint seeking to foreclose the mortgage against the partnership and the two general partners, and to enforce the individual guaranty agreements against each of the guarantors. No defenses were asserted to the foreclosure action and, on December 20, 1985, the trial court entered a final summary judgment of foreclosure against the partnership and the general partners in the amount of $4,593,398.49. Peoples purchased the property on February 3, 1986 for $2,800,000, then moved for a deficiency judgment for the balance of $1,793,398.49. After a trial on the issue, the court entered a deficiency judgment against the partnership and the general partners in the amount of $918,398.49, finding the property to have had a fair market value of $3,675,000 at the time of the sale.
A separate trial was held on July 25, 1986 on the claim against the 11 guarantors, resulting in a 1987 judgment finding the guaranty agreements to be valid and enforceable contracts, and finding each of the guarantors responsible for his pro rata share of the deficiency, attorney's fees, expenses, and prejudgment interest. The guarantors' appeals of the 1987 judgment rendered against them are discussed in full in our written opinion in Case No. 87-1362, Steven L. Renda and Joe-Lin Investments, Ltd. v. Peoples Federal Savings & Loan Association, 538 So.2d 860 (Fla. 1st DCA 1988).
Appellant Peoples brings this appeal from the trial court's deficiency judgment, arguing that the court abused its discretion in finding the fair market value of the property to be $3,675,000. We find competent substantial evidence to support the trial court's finding of fair market value.
The property involved in this case consists of 21 units of a 30-unit project, bounded on the south and southeast sides by high rise condominium buildings. The project is not gulf-front property, but does have a protected gulf access between the two high rise buildings. The 21 units consist of 14 two-bedroom units and 7 three-bedroom units, arranged in buildings of 6 units each with a parking lot, pool, and recreation room.
At the trial on this issue, the court heard the testimony of appraisers John Cox and Edward King, and of appellee James Standard. Cox, appellant/People's expert witness with 36 years of experience as a real estate appraiser in the Destin area, valued the two-bedroom units at $131,000 each and the three-bedroom units at $141,000 each, as of February 3, 1986. Based on the individual retail sales of each unit, the total value of the property was found by Cox to be $2,820,000 as of February 3, 1986. Based on a wholesale bulk sale of *866 all 21 units to one individual, the property was valued at $1.7 million as of February 3, 1986. In arriving at the bulk sale value, Cox took into consideration such factors as the effect of the foreclosure, the "softness" of the second home market in the area at the time, holding costs, and a reasonable market exposure of 90-120 days. Cox's estimate did not take into account the fact that all 21 units were fully furnished. As comparables, Cox used the rear building of the high-rise located at the south of the project (adjusted for the fact that the high-rise had a partial gulf view), a nearby small group of town house condominiums with the same floor plan as Shoreline Gardens and with beach access but without a beach front location, and two other nearby developments with beach access and comparable amenities.
Edward King, appellees' expert with approximately five years' appraisal experience, valued the project at $4,928,000. King's figure was arrived at by adding his estimated retail value of each two-bedroom unit ($230,000) and each three-bedroom unit ($244,000). Taking into account the market conditions at the time, King indicated the value of each individual unit might decrease a maximum of $20,000. King's appraisal of the project was conducted in August 1985; further research was conducted in November 1985. As comparables, King used only high-rise beach front condominiums as of June 1985, stating that the difference in value would be "a matter of personal opinion... . It just depends on the purchaser." King admitted that his estimate was a retail estimate only, and that he did not consider such factors as the value of the property as a whole, the softness of the market due to over-supply, the impact of the foreclosure, time, holding costs, or interest.
James Standard, one of the general partners but not an appraiser, valued the property in excess of $4.6 million as of February 3, 1986, based on the accumulated retail value of seven three-bedroom units at $192,000 each, and fourteen two-bedroom units at $182,000 each. Standard's evaluation was not based on a bulk wholesale or quick sale to a single investor.
In determining the fair market value of the property to be $3,675,000 as of February 3, 1986, the trial court took into consideration the existing market conditions at the time of the foreclosure, the fact that the mortgagee was the purchaser of the property, the location of the property, and the testimony of both King and Cox. We find appellant's argument that the trial court erroneously relied on King's testimony to be unfounded, since it is clear from the final order on this issue that the trial court considered both experts' testimony but felt Mr. Cox's testimony to be more persuasive. Neither was the trial court compelled to accept Mr. Cox's valuation outright, in light of the fact that the mortgagee was the purchaser, indicating that the purchase price may have reflected more of a quick sale value than a true market value indicated by fair negotiations between a willing buyer and a willing seller, neither being under any compulsion or pressure. See Barnard v. First National Bank of Okaloosa County, 482 So.2d 534 (Fla. 1st DCA 1986); R.K. Cooper Construction Company v. Fulton, 216 So.2d 11 (Fla. 1968); Trustees v. Indico Corp., 401 So.2d 904 (Fla. 1st DCA 1981).
Although the appellate court might have reached a different conclusion as to fair market value, the proper standard of review for this court is whether the trial court abused its discretion. Savers Federal Savings & Loan Association v. Sandcastle Beach Joint Venture, 498 So.2d 519 (Fla. 1st DCA 1986). Finding that reasonable persons could have taken the view adopted by the trial court based on the evidence contained in the record, we affirm. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
MILLS and JOANOS, JJ., concur.