538 So.2d 860 (1988)
Steven L. RENDA and Joe-Lin Investments, Ltd., Appellants/Cross-Appellees,
v.
PEOPLES FEDERAL SAVINGS & LOAN ASSOCIATION OF TARENTUM, PENNSYLVANIA, a Pennsylvania Corporation, Appellee/Cross-Appellant.
No. 87-1362.
District Court of Appeal of Florida, First District.
November 10, 1988.
Rehearing Denied December 13, 1988.
Benjamin W. Redding, and Timothy J. Sloan, of Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, for appellant/cross-appellee Steven L. Renda.
Denis L. Durkin and Beth J. Willard, of Baker & Hostetler, Orlando, for appellant/cross-appellee Joe-Lin Investments, Ltd.
W. Wade Wallace, of Bartlett & Wallace, Destin; and Christine Rieger Milton and William S. Graessle, of Mahoney Adams Milam Surface & Grimsley, P.A., Jacksonville, *861 for appellee/cross-appellant Peoples Federal Sav. & Loan Ass'n of Tarentum, Pa.
SHIVERS, Judge.
Appellants Steven L. Renda (Renda) and Joe-Lin Investments, Ltd. (Joe-Lin), defendants in an action brought by appellee Peoples Federal Savings & Loan Association (Peoples) to enforce guaranty agreements, appeal a final judgment finding the guaranty agreements to be enforceable and awarding a judgment in Peoples' favor. Peoples cross-appeals the trial court's calculation of the amount of appellants' liability.
The record on appeal shows that James Standard and Leonard Simpson were general partners of a Georgia limited partnership (Shoreline Garden Townhomes, Ltd.) formed in 1982 to build, own, and operate 21 townhouse units in Destin, Florida. During that year Standard and Simpson, both of whom were Georgia residents, began negotiating with Third National Mortgage Company of Nashville, Tennessee to secure financing for the project. Since the interest rates at that time were almost 18%, the lender and general partners agreed on a negatively amortized, adjustable interest rate loan, whereby a portion of the interest would be initially deferred and added back into the principal at a later time. The principal amount of the loan would increase to become more than the amount originally borrowed, but the initial interest rate would be only 9 7/8%. Initially, Third National indicated that it would require joint and several guaranties from all of Shorelines' limited partners. When Standard and Simpson disapproved of this requirement, a compromise was reached whereby each partner would be required only to personally guarantee his proportionate share of the partnership's total debt. In mid-January of 1983, the two general partners and each of the nine limited partners executed unconditional pro rata loan guaranty agreements, providing: (1) that the borrowers' indebtedness to the lender would not exceed $3.8 million; (2) that each guarantor's liability would not exceed his fractional share of the borrowers' total indebtedness; and (3) that the guarantor's liability would be "direct and not conditional or contingent upon the pursuit by lender of any remedies against borrower." All of the guaranties were executed in Georgia and guaranteed the payment of "every note upon the terms and conditions of each such note... ." The notes themselves specifically provided for payment to be made to Third Financial Services, Inc. in Nashville, Tennessee. The partnership's loan closed in two phases  January of 1983 (covering nine townhouse units) and April of 1983 (covering twelve units). Third National subsequently assigned its interest in the loan to appellee Peoples.
The partnership defaulted on the loan beginning in December of 1984, and Peoples filed a 32-count complaint in the First Judicial Circuit, Okaloosa County, seeking to foreclose the mortgage against the partnership and the two general partners, and to enforce the guaranty agreements against each of the guarantors. The partnership, the two general partners, and the seven non-resident limited partners moved to quash process and service of process, and to dismiss the complaint on the basis of lack of personal jurisdiction.[1] The two resident limited partners filed motions to dismiss or, in the alternative, to transfer on the basis of improper venue. The trial court denied all of the motions. Each of the non-resident defendants was found to be subject to the long-arm jurisdiction of the court under section 48.193, Florida Statutes, by virtue of their having engaged in a business or business venture in Florida. In addition, the court found that the complaint and its exhibits demonstrated that the action arose from the limited partnership's ownership and use of property in Okaloosa County, "thus supplying an additional jurisdictional basis ... at least as to defendant Shoreline and its general partners, defendants Simpson and Standard."
*862 No defenses were asserted to the foreclosure action and, on December 20, 1985, the trial court entered a final summary judgment of foreclosure against the partnership and the general partners in the amount of $4,593,398.49. Peoples purchased the property on February 3, 1986 for $2,800,000, then moved for a deficiency judgment for the balance of $1,793,398.49. After trial on the issue, the court entered a deficiency judgment against the partnership and the general partners in the amount of $918,398.49, finding the property to have had a fair market value of $3,675,000 at the time of the sale.[2]
A separate trial was held on July 25, 1986 on Peoples' claim against the guarantors, resulting in a May 11, 1987 final order finding the guaranty agreements to be valid and enforceable contracts. Instead of awarding Peoples the total amount of the deficiency, however, the trial court offset the proceeds which Peoples received from the foreclosure (the fair market value of the property  $3,675,000) against the $3,800,000 limit on the loan, and found the guarantors liable for the difference of $125,000. Final judgment was entered on July 22, 1987, finding each of the guarantors responsible for his pro rata share of $718,703.43 ($125,000 in principal; $410,819.10 in prejudgment interest from May 1, 1987; $57,019.73 in insurance, taxes, and escrow; $121,648.50 in attorney's fees; and $4,216.10 in costs).
Appellants Renda and Joe-Lin raise three issues in this appeal from the trial court's judgment on the guaranty agreements: (1) whether the trial court erred in ruling that it had personal jurisdiction over the defendants; (2) whether the trial court erred in failing to find the guaranty agreements void for breach of condition; and (3) whether the trial court erred in awarding Peoples attorney's fees, prejudgment interest, insurance, taxes, and escrow. In addition to the three common issues, appellant Renda argues separately that the trial court erred in finding him to be liable under the guaranty agreement. Peoples argues on cross appeal that the trial court erred in offsetting the defendants' liability by the value received by Peoples from the judicial sale. We agree with appellants that the trial court erred in finding that jurisdiction was properly exercised over the two non-resident appellants based on either their having engaged in a business venture within the state of Florida, or on the limited partnership's ownership and use of property in the state of Florida.
Section 48.193(1), Florida Statutes, enumerates several acts which, if performed by a non-resident defendant or his agent, will subject the defendant to the jurisdiction of the Florida courts for any cause of action arising out of the doing of the act. Among the acts listed in section 48.193 are the following:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
(b) Committing a tortious act within this state.
(c) Owning, using, or possessing any real property within this state.
(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.
* * * * * *
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
In order to assert long-arm jurisdiction over a non-resident defendant, a plaintiff must allege specific facts in his complaint, sufficient to fall within the language of the statute. International Harvester Company v. Mann, 460 So.2d 580 (Fla. 1st DCA 1984). Failure to allege such specific facts constitutes grounds for granting the defendant's motion to dismiss the cause of action. Wynn v. Aetna Life Insurance Company, 400 So.2d 144 (Fla. 1st DCA 1981).
In both of the counts brought against Renda and Joe-Lin on the guaranty agreement, *863 the plaintiff alleged execution of agreements to guarantee the payment of every note executed by the partnership in favor of Third Financial and the failure to comply with the terms of the guaranties, and attached copies of the guaranties to the complaint. As stated above, the guaranties were executed by the appellants in Georgia, and the terms of the notes guaranteed by the agreements specifically provided for payment to be made in Tennessee. There is no indication in the record that Third National's assignment of the notes to Peoples in any way altered the condition that the notes be paid in Tennessee.
Under these facts, the complaint filed by Peoples failed to allege sufficient facts which would establish any of the bases for long-arm jurisdiction enumerated in section 48.193(1). At most, the allegations of the complaint established that the two non-resident defendants made an agreement in Georgia, to guarantee the payment of notes in Tennessee. These allegations do not establish that the defendants engaged in a business venture in the state of Florida, nor do they connect the defendants' breach of the guaranty agreements to the partnership's ownership and use of property in Florida. Even if we were to find that the complaint contained sufficient allegations of jurisdiction, neither of the trial court's bases for the exercise of long-arm jurisdiction are valid in this case, since the facts do not establish that the defendants had the minimum contacts necessary to subject them to the jurisdiction of the Florida courts.
In Anson v. Lemperuer, 390 So.2d 478 (Fla. 1st DCA 1980), this court found a New York resident to be subject to the jurisdiction of the Florida courts under the long-arm statute, where the New York resident was a partner in a general partnership whose express purpose was to acquire land in Florida for the development and construction of townhouse units. Under the facts, we found the cause of action to have arisen out of the active conduct of business in Florida under the partnership agreement, subjecting the defendant to in personam jurisdiction under section 48.193(1). Likewise, both non-resident limited partnerships and their non-resident general partners may be subjected to long-arm jurisdiction based on a cause of action arising out of the act of doing business within the state. 59A Am.Jur.2d Partnership, § 1387. The fact that the limited partnership itself may be subject to the state's long-arm jurisdiction, however, does not give the court jurisdiction over the non-resident limited partners, since the limited partners are said to be mere investors in the limited partnership, holding an interest in the partnership analogous to the purchase of stock in a corporation. 59 Am.Jur.2d, § 1387; Klein v. Mega Trading, Ltd., 416 So.2d 866 (Fla. 3d DCA 1982) (holding that a New Jersey resident's investment in a Florida limited partnership was no more than that of a non-resident corporate officer and director of a Florida corporation, and did not constitute sufficient minimum contacts with Florida so as to subject him to the jurisdiction of the Florida courts).[3]
Further, the execution of an agreement to guarantee the obligations of the Florida corporation by non-residents has been held to be insufficient contact, in and of itself, to confer Florida jurisdiction over the guarantors. Edwards v. Geosource, Inc., 473 So.2d 36 (Fla. 1st DCA 1985).[4]
Aside from the two bases found by the trial court, the only other possible basis for long-arm jurisdiction over the appellants is section 48.193(1)(g), the breach of a contract in Florida by failing to perform acts required by the contract to be performed in Florida. However, that section is also insufficient to confer jurisdiction in the instant case, because the agreements signed by the appellants in Georgia guaranteed payment of a Tennessee debt. The fact that the Tennessee notes were executed by the partnership for the purpose of *864 purchasing property in Florida does not subject the appellants to long-arm jurisdiction under 48.193(1)(g), since the guaranty agreements do not require the performance of any acts within the state of Florida. Cf. Moltz v. Seneca Balance, Inc., 606 F. Supp. 612 (N.D.Fla. 1985) (finding non-resident guarantors to have had sufficient minimum contacts with Florida to permit the federal district court to exercise jurisdiction under 48.193(1)(g), where the underlying promissory note required payment to be made in Florida).
Finding as we do that the trial court impermissibly exercised in personam jurisdiction over the appellants, it is unnecessary to address the remaining issues on appeal and on cross appeal. Accordingly, the trial court's order denying appellant's motion to dismiss is hereby reversed.
REVERSED.
MILLS and JOANOS, JJ., concur.
NOTES
[1] In addition to the appellants in the instant case, the five other non-resident limited partners moving to dismiss were Kim, Hollis, Hargas, Mallady, and Bean, and the two resident limited partners were Hanson & Searcy, all of whom have filed separate appeals from the final judgment.
[2] The trial court's finding of fair market value is the subject of this court's opinion in Peoples Federal Savings & Loan Association v. Shoreline Garden Townhomes, II, Ltd., 538 So.2d 864 (Fla. 1st DCA 1988).
[3] The contacts between the state of Florida and the appellants in the instant case are even less than those in Klein, since the appellants are non-resident limited partners of a Georgia limited partnership.
[4] Once again, the Florida contacts in the instant case are even less than those in Geosource, since appellants Renda and Joe-Lin agreed to guarantee the obligations of a Georgia entity.