644 So.2d 1361 (1994)
FIRST UNION NATIONAL BANK OF FLORIDA, Appellant,
v.
GOODWIN BEACH PARTNERSHIP, et al., Appellees.
No. 93-743.
District Court of Appeal of Florida, Fifth District.
September 16, 1994.
Rehearing Denied December 1, 1994.
E. Lanny Russell and Mary E. McManus of Smith, Hulsey & Busey, Jacksonville, for appellant.
Frank D. Upchurch, III of Upchurch, Bailey and Upchurch, P.A., St. Augustine, and Stephen Stratford, Jacksonville, for appellees.
COBB, Judge.
This appeal concerns the denial of a deficiency judgment sought by a mortgagee on the basis of the trial court's determination that the fair market value of the realty securing the debt exceeded the judgment debt at the time of the foreclosure sale. See Ricard v. Equitable Life Assurance Society of U.S., 462 So.2d 592 (Fla. 5th DCA 1985); F.D.I.C. v. Circle Bar Ranch, Inc., 450 So.2d 921 (Fla. 5th DCA 1984). The decision below is flawed in several respects, necessitating reversal for a new trial on the deficiency issue.
In 1990, First Union's predecessor in interest, Southeast Bank, N.A., filed a foreclosure action against Goodwin Beach Partnership and other defendants, resulting in a final judgment which aggregated $4,986,487.00 as of the date of the foreclosure sale. First Union purchased the property at the foreclosure sale in November, 1991 for the nominal sum of $1,000.00 and thereafter moved for entry of a deficiency judgment. Jurisdiction to entertain deficiency proceedings was retained in the foreclosure judgment itself. Prior to commencement of the deficiency hearing, First Union sold the realty for $2,500,000.00 to a third party.
At the evidentiary hearing, First Union presented evidence of its sale of the property for $2,500,000.00; the tax assessment for 1991 of $3,106,500.00; and the expert opinion of an MAI based upon an income approach that the value of the property was $2,180,000.00. The defendants (hereinafter referred to as Goodwin) presented opinion evidence from three appraisal experts whose value estimates, based upon a comparable sale method, ranged from $5,000,000.00 to $5,200,000.00. One of these experts, Crenshaw, found the value to be $4,800,000.00 based on a discounted cash flow method. Crenshaw's appraisal was erroneously based upon an assumption that there were 69.13 acres involved rather than the correct acreage, as determined by the trial court, of 65 acres.
At the conclusion of the hearing, the trial judge declined to award a deficiency judgment, finding that "comparable sales were not helpful because of the special nature of this parcel." The trial court specifically rejected any consideration of unpaid real estate taxes of $124,953.00 extant as of the date of the foreclosure sale. The trial court found that any such tax consideration was barred by the doctrine of res judicata and cited to the case of Horne v. Smith, 368 So.2d 392 (Fla. 1st DCA 1979).
*1362 Initially, it should be noted that the trial court's judgment is intrinsically inconsistent in rejecting comparable sales as "not helpful" and thereafter relying on appraisals at trial utilizing that method of appraisal. The appraisals at trial utilizing a different method  i.e., discounted cash flow  did not exceed the amount of $4,800,000.00, an amount which would have justified a deficiency judgment of some $186,500.00, exclusive of the tax consideration.
More egregious, however, was the trial court's refusal to consider the amount of unpaid ad valorem taxes on the subject property as detracting from its value on the date of foreclosure on the theory that the plaintiff should have had the delinquent tax amount of $124,953.00 included in the final judgment of foreclosure it obtained. The trial court clearly misconstrued Horne, which involved two separate actions. That case held that mortgagees who foreclosed a second mortgage on property with outstanding ad valorem taxes due thereon, and who acquired title thereto without raising the issue of a deficiency in that action, could not thereafter seek to recover those unpaid taxes from the prior owners in a subsequent action. It is obvious that the doctrine of res judicata cannot apply where there is one continuing action.[1] The court in Horne explicitly noted that "No deficiency judgment was ever entered in the foreclosure case." 368 So.2d at 393. Section 702.06, Florida Statutes, authorizes entry of a deficiency decree, should a deficiency exist, in all suits for the foreclosure of mortgages. The mortgagees here are simply seeking a deficiency judgment in connection with the foreclosure action.[2]
The underlying theory that a purchaser at a mortgage foreclosure sale is presumed to have made allowances for prior liens in making his bid cannot logically apply to the instant situation where the token price of $1,000.00 paid by the mortgagee at foreclosure sale was totally rejected (and rightfully so) by the trial court as indicative of true market value. Whether or not First Union National Bank of Florida considered the tax indebtedness on the property in fashioning its successful bid at foreclosure sale is therefore irrelevant. It is obvious that real estate with an outstanding tax indebtedness against it is worth less than that same property free and clear of debt, and that should have been equally obvious to the trial judge. The amount of the delinquent taxes should have been considered in arriving at a fair market value. See Federal Deposit Ins. Corp. v. Morley, 915 F.2d 1517 (11th Cir.1990); City Savings Bank of Bridgeport v. Miko, 1 Conn. App. 30, 467 A.2d 929 (1983); First of America Bank-Oakland Macomb, N.A. v. Brown, 158 Mich. App. 76, 404 N.W.2d 706 (1987); McCrum v. Rubbert, 219 Iowa 454, 257 N.W. 766 (1934). If Horne actually stood for the proposition attributed to it by the trial court and the dissent herein, then we should simply reject it as illogical and inequitable.
REVERSED AND REMANDED FOR NEW TRIAL.
*1363 DAUKSCH, J., concurs.
W. SHARP, J., dissents with opinion.
W. SHARP, Judge, dissenting.
I respectfully dissent. There simply is no valid basis to overturn the trial judge's factual determination in this case. And the rule of law announced by the majority upsets established precedent, and creates a conflict with our sister courts, as well as this court's prior cases.
The First Union National Bank appeals from a final judgment which denied it a deficiency decree against Goodwin Beach Partnership, a Florida general partnership, which was the mortgagor in a foreclosure suit, various individuals,[1] who were Goodwin's general partners, and the Ponce de Leon Utility Company of St. Johns County. After a non-jury trial, the court ruled that the fair market value of the property on the foreclosure date exceeded the total mortgage indebtedness. First Union argues that the court's finding is not supported by substantial evidence because the trial court expressly rejected the market approach or comparable-sales method of valuation, the trial court failed to discount the property's fair market value by unpaid real estate taxes due and unpaid on the date of the foreclosure sale, and the trial court erred by excluding First Union's "rebuttal" expert-appraiser witness from the courtroom during the trial. I would affirm.
The record in this case establishes that the Goodwin partnership acquired the real property involved in this lawsuit in 1984 for $4,125,000.00. It is (approximately) a 65-acre, narrow tract of land which runs from the ocean to the intercoastal waterway. It lies ten miles north of St. Augustine, and fifteen miles south of the Tournament Player's Club, near Ponte Vedra.
In 1986, Southeast Bank refinanced the property to provide additional financing to prepare the property for development. Highway A1A was relocated away from the oceanfront at a cost of $700,000.00. This created deep oceanfront property which permits building on it in full compliance with all coastal setback rules and avoids the costly variance and permitting process often necessary for building on other oceanfront properties in that area. The partnership also obtained approval for a P.U.D. for the property. A water and sewer treatment plant were installed, and a well-cistern and easement system established.
Unfortunately, the real estate market cooled, and Goodwin was unable to sell or refinance the property. It defaulted on the mortgage and Southeast Bank filed a foreclosure suit in September of 1990. In October 1991, a final judgment of foreclosure was rendered. It determined the total mortgage debt owed was $4,913,790.31. The amount of the final judgment plus interest until the date of the sale (November 15, 1991) amounted to $4,986,487.00.
By that time, First Union had merged with and acquired Southeast Bank's assets. First Union bought the property at the foreclosure sale for $1,000.00 in November of 1991. Outstanding at the time of foreclosure and sale was a tax certificate for 1990 real estate taxes totalling $68,937.88 and there were also unpaid taxes for 1991 totalling $56,015.58. Neither tax indebtedness was itemized nor included in the final mortgage debt determined in the foreclosure proceedings, and no attempt was made to amend or open those proceedings to include the real estate taxes.
Four months after the foreclosure sale, First Union sold the land to D.D.I., Inc. for $2,500,000.00. Pursuant to the sales contract, the Bank paid the 1990 tax certificate and the parties prorated the 1991 tax obligation. There was testimony that First Union considered the property had a "net realizable value" of $2,330,000.00. The Bank's witness testified this is not necessarily the same thing as "fair market value." It is more similar to liquidation value, or what the Bank could expect to sell it for, for cash, in a quick sale. For these reasons, the trial court rejected the $2,500,000.00 sales price as not *1364 indicative of the fair market value of the property at the time of the foreclosure sale.
Various witnesses testified at the trial about the property's fair market value in November of 1991. Mike Roy, a qualified real estate appraiser, testified for First Union that the fair market value was $2,180,000.00. He used an income approach, calculating the total income realizable, less development and sales costs, and discounted that sum by an estimated time to sell out the developed project. He rejected the market approach because he said there have been no sales of comparable properties anywhere near this area. The property is unique because of its size and its combination of both large ocean and intercoastal frontage.
Wayne Brown testified for appellees. Using the market approach, he opined the fair market value in 1991 was $5,026,000.00. He subtracted value for the 500-foot ocean frontage the prior developers pledged to deed to St. Johns County and acreage of the marsh area on the intercoastal side occupied by the utilities. He added value for the depth of the oceanfront lots because of the lack of any permitting problems.
Robert Crenshaw also testified for the appellees. He used both a market approach and an income or development approach. With regard to the market approach, he testified the fair market value was $5,200,000.00. He based his calculations only on net usable acres. He gave added value to the intercoastal land because of its "superior" characteristics, substantial marsh-front and road frontage. He also gave added value to the ocean property because of its depth and lack of coastal set back problems.
Using the income or development approach, Crenshaw came up with a $4,800,000.00 value. He admitted he had to estimate carrying costs such as taxes, development and sales costs, and a fair discount rate to apply the estimated sellout time. Changing any one factor would result in a different value. He "reconciled" his market approach and his income approach to $5,000,000.00.
Also included in the record on appeal is an appraisal by Roy Smith, an S.R.A., who valued the property as of June 19, 1991 at $5,000,000.00. He did not testify. His valuation is based on a market approach and is consistent with Brown's and Crenshaw's appraisals.

I. DETERMINATION OF FAIR MARKET VALUE ON DATE OF FORECLOSURE SALE

A party seeking a deficiency judgment after completion of a mortgage foreclosure sale in Florida must present competent evidence that the indebtedness owed exceeds the fair market value of the property on the date of foreclosure. Mizner Bank v. Adib, 588 So.2d 325 (Fla. 4th DCA 1991); Ricard v. Equitable Life Assurance Society of U.S., 462 So.2d 592 (Fla. 5th DCA 1985); F.D.I.C. v. Circle Bar Ranch, Inc., 450 So.2d 921 (Fla. 5th DCA 1984). Florida cases are not uniform in determining which party  the mortgagor (debtor)[2] or mortgagee (foreclosing creditor)[3]  has the initial burden of proof of fair market value. But it is not necessary to resolve that issue in this case since both parties here presented adequate evidence and testimony to carry whatever burden of proof might be ascribed to them.
If there is competent and sufficient evidence to support the trial judge's findings regarding fair market value, an appellate court must affirm. Peoples Federal Savings & Loan Ass'n of Tarentum, Pa. v. Shoreline Garden Townhomes, II, Ltd., 538 So.2d 864 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1334 (Fla. 1989); Municipal Savings & Loan Corporation v. Fiorentino, 512 So.2d 228 (Fla. 3d DCA 1987). This is particularly required in cases such as this where there *1365 was a diversity of expert opinion and the trial judge had to resolve conflicting facts and opinions.[4] Only if the appellate court can say the trial court abused its discretion in some concrete manner, is a reversal proper.[5]
First Union argues that the trial judge in this case rejected the market or comparable sales appraisal method, and thus could only have found the fair market value of the property was at best $4,800,000.00 (the highest income or development appraisal value established at the trial). This would have resulted in a deficiency of $186,487.00 (mortgage debt, $4,986,487.00, less fair market value, $4,800.00.00).
Some statements made by the trial judge in his judgment denying a deficiency judgment lend support to First Union's position. The court said:
Comparable sales were not helpful because of the special nature of this parcel not reasonably related to absence of coastal construction control lines. Ocean front comparables testified to involved necessity for DNR permits as all were within (East of) existing CCC lines.
Because of these unique characteristics, the court found that the fair market value of this parcel exceeded the comparable sales figures and the expert opinions based on them. He did not reject them.[6] The judge calculated a fair market value based on a higher per-lot value at $5,610,000.00.
No expert witness' testimony at trial came close to that higher value. If an affirmance of this case turned on sustaining that finding, I might not be able to do so. See Savers Federal Savings & Loan Ass'n. v. Sandcastle Beach Joint Venture; Barnard v. First National Bank of Okaloosa County, 482 So.2d 534 (Fla. 1st DCA 1986); Flagship Bank of Orlando v. Bryan, 384 So.2d 1323 (Fla. 5th DCA 1980). The trial judge, as the fact finder in this case, must base value findings on competent and substantial evidence. See Sun Bank/North Florida N.A. v. Edmunds, 624 So.2d 753 (Fla. 1st DCA 1993), rev. denied, 634 So.2d 623 (Fla. 1994).
However, the trial court concluded that "[t]he fair market value of the foreclosed site, in light of its special characteristics, i.e., 2,200 feet of buildable ocean frontage and remaining acreage supporting a substantial number of single-family residential lots exceeded $5,000,000.00 on November 15, 1991." The appraisals of Crenshaw, Smith and Brown, and the testimony of Crenshaw and Brown are sufficient to support the trial judge's ultimate finding that the fair market value of the property on November 15, 1991 was at least $5,000,000.00. See Peoples Federal Savings & Loan Ass'n; Community Bank of Homestead v. Valois, 570 So.2d 300 (Fla. 3d DCA 1990).
The selling price of the property to D.D.I., Inc. shortly after the foreclosure sale is evidence of the property's fair market value. However, the trial court did not have to accept it as determinative. Merrill v. Nuzum, 471 So.2d 128 (Fla. 3d DCA 1985). Fair market value is defined for such purpose as "the amount that would be paid for the property to a willing seller, not compelled to sell, by a willing buyer, considering all reasonable uses to which the property is adapted." Savers Federal Savings & Loan Ass'n., 498 So.2d at 521-522.
In the judgment appealed, the trial court expressly rejected the $2,500,000.00 sale price to D.D.I., Inc. as not being indicative of *1366 its real or "conclusive" value because the Bank was under pressure to make a quick cash sale, and it had a close business relationship with D.D.I., Inc. and its stockholders. A sale made under time pressure, or one which is not clearly "arm's length" can be rejected as not true "fair market value." See Barnard v. First National Bank of Okaloosa County; Merrill v. Nuzum.

II. PROPRIETY OF EXCLUDING TAX INDEBTEDNESS FROM THE CALCULATION OF FAIR MARKET VALUE ON DATE OF FORECLOSURE

First Union argues, not without considerable logic, that the 1990 and 1991 real estate tax indebtedness totalling $124,953.00, which had accrued on the property by November of 1991 (date of the foreclosure sale), should be used to reduce the fair market value of the property on that date. Analogous to a first mortgage or other priority lien against the property, an accrued tax obligation is normally deducted by a prudent buyer from its offering price and thus should be a component in arriving at the theoretical amount a buyer would have paid to a seller for the property in November 1991. Out of state cases support this view. See, e.g., First of America Bank-Oakland Macomb, N.A. v. Brown, 158 Mich. App. 76, 404 N.W.2d 706 (1987); City Savings Bank of Bridgeport v. Miko, 1 Conn. App. 30, 467 A.2d 929 (1983).
In F.D.I.C. v. Morley, 915 F.2d 1517 (11th Cir.1990), the appellate court said the trial court properly applied Florida law in a deficiency judgment proceeding. However, the trial court denied the parties a full evidentiary hearing on determining fair market value, and decided the case solely on the basis of affidavits and written appraisals. The appellate court approved that procedure, and without citing any Florida authority, it approved the trial court's reduction of fair market value by accrued tax obligations due on the date of the foreclosure sale.
The Florida courts, however, have taken a different path on this issue. They view the reduction of fair market value because of accrued real estate taxes as governed by the doctrine of res judicata. See Horne v. Smith, 368 So.2d 392 (Fla. 1st DCA 1979). In Horne, as in this case, the mortgagee bought the foreclosed real estate at the foreclosure sale, and as in this case, did not include delinquent real estate taxes (then unpaid) in the final judgment of indebtedness. After having acquired title, the former mortgagee (then owner) had to pay ground lease payments and delinquent taxes, which had been defaulted on by the mortgagor. The court said:
Plaintiffs are precluded from recovering from defendants ground lease payments and taxes allegedly due under the second mortgage by the doctrine of res adjudicata... . Plaintiffs may not now be heard to litigate matters which should have been raised in the prior foreclosure action... . [Plaintiffs] may not recover any payment they made to relieve their own property from a lien subject to which they took title... . A purchaser at mortgage foreclosure sale is presumed to have made allowances for prior liens in making his bid.
Horne, 368 So.2d at 394.
In Horne, the purchasing mortgagee bid $18,000.00 at the foreclosure sale, having obtained a $35,135.00 judgment. In that regard, Horne could be distinguished from this case since First Union bid only a nominal amount for this property at the foreclosure sale. However, the broad language in Horne makes any effort to distinguish it from this case fruitless. It concluded quite definitively that any payments in reduction of an indebtedness or prior mortgage payments or property taxes made by a foreclosure purchaser after becoming owner of the property at the foreclosure sale cannot be recovered from the mortgagor by way of a deficiency decree. The court also pointed out that these amounts were not proven by the plaintiffs or made a part of the final judgment foreclosing the second mortgage. Thus, the court concluded that the plaintiffs may not now be heard to litigate matters which should have been raised in the prior foreclosure action.
Horne relied on Gordon v. Gordon, 59 So.2d 40 (Fla. 1952), cert. denied, 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952), a somewhat unlikely precedent. Gordon is a floridly written pre-no-fault divorce case *1367 which has nothing in common with mortgage foreclosure cases except a reverence for the doctrine of res judicata.
However, I have found no Florida case that departs from Horne, and many that follow its rationale,[7] including a decision by this court, Patron v. American National Bank of Jacksonville, 382 So.2d 156 (Fla. 5th DCA 1980). Patron involved payment of accrued real estate taxes by a foreclosing mortgagee-purchaser, in a case in which the mortgagee bid its full mortgage judgment amount at the foreclosure sale. This court held that the mortgagee was not entitled to be reimbursed for back taxes from funds collected by the receiver of the property. In that case, the final judgment did not include a reference to taxes. We cited Horne with approval:
It has been held that payments made to reduce indebtedness on a prior mortgage by a foreclosure purchaser cannot be recovered by the purchaser from the mortgagor, ...
382 So.2d at 158. This court also pointed out that the mortgagee could have paid the taxes and obtained an amended judgment adding the amount paid to the mortgage amount due but that it failed to do so.
In Consales, N.V. v. Sunshine State Mortgage Co., 639 So.2d 170 (Fla. 3d DCA 1994), the Third District recently held that payment of back taxes and unpaid water bills from the surplus proceeds of the sale of the foreclosed property was improper where the final judgment of foreclosure did not provide for such payments. In that case, $238,749.85 was due under the final judgment of foreclosure and $357,000.00 was successfully bid at the foreclosure sale. The court entered orders requiring disbursement from the surplus to pay the 1993 real property taxes and the unpaid water bills. However, neither of these obligations had been adjudicated nor included in the final judgment of foreclosure. The Third District held that the failure of the final judgment to provide for these payments rendered the orders requiring such disbursements "entirely erroneous." 639 So.2d 170.
The court in Consales relied on section 197.217, Florida Statutes (1991), which provides:
All officers of the court selling property under process or court order shall pay all taxes that are due and unpaid against the property from the proceeds of the sale after the payment of the costs of the proceedings and any attorney's fee allowed by the court when the court order or process directs that taxes shall be paid. (emphasis supplied)
Because the judgment in Consales did not provide for the payment of real estate taxes and accrued water bills, the court held the surplus sale proceeds (which should have been paid en toto) to a second mortgagee, should not be applied to benefit the foreclosing first mortgagee.
In the present case, the amount of delinquent taxes was not included in the final judgment of foreclosure. Thus, following established Florida precedent, First Union should not now be entitled to deduct the amount of back taxes from the fair market value of the property in seeking a deficiency judgment against the foreclosed mortgagor. Under the doctrine of res judicata, the final judgment of foreclosure fixed the obligation between the parties and, as in Consales, it failed to include any provision for payment of taxes. Under the terms of the mortgage, First Union was entitled to pay delinquent taxes and add that amount to the indebtedness secured by the mortgage. The amended complaint for foreclosure alleged that the defendants owed real estate taxes in addition to principal, interest and other costs. Thus the amount of taxes owed was an issue which was or could have been determined in the foreclosure proceedings.[8]
*1368 Since the matter of unpaid taxes was not included in the final judgment of foreclosure, in my view, the trial court correctly rejected First Union's argument that the $124,953.00 tax liability should have been used to reduce the subject property's $5,000,000.00 fair market value on the date of the foreclosure sale, thereby affording First Union a deficiency of at least $111,440.00.[9] Precedent requires that we adhere to Horne, and the ensuing Florida cases, and not overturn an apparently well-settled area of Florida's law of mortgage foreclosures and deficiency judgments. This is particularly vital in substantive areas of the law such as real estate and mortgage foreclosure because only clarity and consistency of rules of law make possible the flow of commerce and transfer of rights. In my view, by requiring the trial court to consider the amount of unpaid taxes to determine fair market value of the property, post-final judgment, the majority upsets well-established law and conflicts with Consales.

III. EXCLUSION OF FIRST UNION'S EXPERT WITNESS FROM COURTROOM DURING TRIAL

First Union argues that the exclusion of its expert appraiser witness, Walter Lampe, from the courtroom during the course of the non-jury trial was erroneous and deprived it of a fair trial. At the beginning of the trial, the court invoked the "Rule of Sequestration"[10] for all persons who might testify. First Union requested that Lampe be allowed to hear the testimony of appellees' expert witnesses so that he could be called as First Union's rebuttal witness after appellees concluded their case. First Union cited section 90.704 of the Florida Evidence Code, which permits an expert witness to base an opinion on facts or data made known to him or her at the trial. First Union also cited section 90.616(2)(c) of the Florida Evidence Code that a person whose presence is shown by the party's attorney to be essential to the presentation of the party's cause, should not be excluded from the courtroom by the witness-sequestration rule.
However, First Union gave no explanation or made no proffer at the non-jury trial about what facts and data Lampe would use to formulate an opinion, nor what his opinion on rebuttal might concern. The trial judge assumed Lampe would be called on rebuttal to give his opinion of the other expert's opinions. That would not be a proper use of expert opinion, as all agreed. See Carver v. Orange County, 444 So.2d 452 (Fla. 5th DCA 1983); Carlton v. Bielling, 146 So.2d 915 (Fla. 1st DCA 1962). Since First Union failed to proffer any other basis for Lampe's opinion testimony on rebuttal, it was proper for the trial court to rule as it did, that First Union could either sequester Lampe, if it intended to call him as a witness, or have him sit with counsel at trial in an advisor capacity, but not then be permitted to testify. See Simpson v. K-Mart Corp., 537 So.2d 677 (Fla. 3d DCA 1989).
NOTES
[1] The case of Patron v. American National Bank of Jacksonville, 382 So.2d 156 (Fla. 5th DCA 1980) cited by the dissent, has no applicability to the instant issue for the simple reason that it involved a mortgagee's purchase of property at foreclosure sale for the full amount of its final judgment, thereby satisfying that judgment in full. Hence, no deficiency was possible. In other words, the bargain made by the bidding mortgagee was to give up its entire judgment for the property as encumbered. Patron at 158. That did not happen in the instant case. In point of fact, contrary to the assertions of the dissent, there is not a single Florida case that has held that tax encumbrances against foreclosed property cannot be considered as affecting the value of that property so long as the issue is raised in the foreclosure action and not in a subsequent action, as occurred in Horne. And, contrary to the concept of the dissent, a deficiency proceeding is not a separate and subsequent action giving rise to res judicata considerations. It is ancillary to, and an integral part of, the foreclosure action itself. Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, aff'd on rehearing, 101 Fla. 1337, 135 So. 795 (1931); Edwards v. Meyer, 100 Fla. 235, 130 So. 57 (1930); § 702.06, Fla. Stat. (1993).
[2] Consales, N.V. v. Sunshine State Mortgage Trust, 639 So.2d 170 (Fla. 3d DCA 1994), cited by the dissent, is distinguishable from the instant case for two obvious reasons: (1) the bid on the property therein far exceeded the amount of the foreclosure judgment; and (2) the foreclosure judgment being satisfied, no deficiency judgment was involved in that case.
[1] Samuel R. Shorstein, Donald Freedman, Jane Freedman, Jack F. Shorstein, Harry L. Shorstein, William J. Joos, Jack Clifford Sherrod, Mitchell R. Montgomery, Amos F. Almand, III, and Gerald L. Dake.
[2] See Addison Mortgage Co., Inc. v. Weit, 613 So.2d 104 (Fla. 3d DCA 1993); Fara Manufacturing Co. v. First Federal Savings & Loan Ass'n. of Miami, 366 So.2d 164 (Fla. 3d DCA 1979).
[3] See Coral Gables Federal Savings & Loan Ass'n. v. Whitewater Enterprises, Inc., 614 So.2d 682 (Fla. 5th DCA 1993); Liberty Business Credit Corporation v. Schaffer/Dunadry, 589 So.2d 451 (Fla. 2d DCA 1991); Thunderbird, Ltd. v. Great American Insurance Co., 566 So.2d 1296 (Fla. 1st DCA 1990); Norwest Bank Owatonna, N.A., v. Millard, 522 So.2d 546 (Fla. 4th DCA 1988); Savers Federal Savings & Loan Ass'n. v. Sandcastle Beach Joint Venture, 498 So.2d 519 (Fla. 1st DCA 1986).
[4] See Wilson v. Adams & Fusselle, Inc., 467 So.2d 345 (Fla. 2d DCA 1985).
[5] See Peoples Federal Savings & Loan Ass'n.; Coppola v. Housing Inv. Corp. of Florida, 400 So.2d 112 (Fla. 4th DCA 1981); Horne v. Smith, 368 So.2d 392 (Fla. 1st DCA 1979).
[6] The majority claims that the trial court's judgment is "intrinsically inconsistent" by stating in one place that comparable sales were not helpful in arriving at a fair market value of the property and then relying throughout the rest of the judgment upon appraisals based on comparable sales. This is the same argument advanced by First Union on appeal. Giving full credence and presumption of correctness to the trial judge, this view mischaracterizes the court's remark. The trial court is simply saying that a direct comparison of sales of other parcels of vacant land would not establish the fair market value of this property. The majority of the comparable sales property was located east of the coastal setback line and its development or improvement would require a costly permit procedure. In contrast, the property in this case already had the necessary permits and thus its value was greatly enhanced.
[7] See, e.g., Provident National Bank v. Thunderbird Associates, 364 So.2d 790 (Fla. 1st DCA 1978) (Horne applied to payments to reduce a prior mortgage); Tymber Skan Properties, Ltd. v. Lutheran Mutual Life Insurance Company of Waverly, Iowa, 358 So.2d 1370 (Fla. 2d DCA 1978) (Horne applied to deny mortgagee recovery of documentary stamps after foreclosure sale).
[8] Even if the taxes had not been paid at the time of final judgment of foreclosure, First Union could have requested a reservation of jurisdiction or sought to amend the final judgment to include these amounts. The reservation of jurisdiction that is in the final judgment of foreclosure provides that "[j]urisdiction of this action is retained to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments." Thus it refers only to ministerial or supplemental proceedings and not to matters which should have been litigated and determined in the foreclosure action.
[9] $5,000,000.00 less $124,953.00 equals $4,875.047.00, which is $111,440.00 less than the total mortgage indebtedness of $4,986,487.00.
[10] § 90.616, Fla. Stat. (1991).